1  STEVEN G. GATLEY, SB# 155986
       E-Mail: gatley@lbbslaw.com
2  JERRY J. CHANG, SB# 243199
       E-Mail: jchang@lbbslaw.com
3  **LEWIS BRISBOIS BISGAARD & SMITH LLP**
   221 North Figueroa Street, Suite 1200
4  Los Angeles, California 90012
   Telephone: (213) 250-1800
5  Facsimile: (213) 250-7900

6  Attorneys for Defendant Marriott International, Inc.

FILED
10 MAR -4  PM 12: 24

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY: _____

7

8                    UNITED STATES DISTRICT COURT

9            CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

10

11  LUDMILA LISA LUKOVSKY, an          ) CASE No. **CV 10- 01607- R**
    individual,,                        )              (MANx)
12                                      )
              Plaintiff,                ) **NOTICE OF REMOVAL OF**
13                                      ) **ACTION UNDER 28 U.S.C. § 1441(b)**
        v.                              ) **(DIVERSITY)**
14                                      )
    MARRIOTT INTERNATIONAL, INC.,       )
15  a Delaware Corporation; CIM GROUP,  )
    L.P., a California Limited Partnership; )
16  and DOES 1 through 100 inclusive,,  )
                                        )
17            Defendants.               )
                                        )
18

19  TO THE CLERK OF THE ABOVE-ENTITLED COURT:

20        PLEASE TAKE NOTICE THAT Defendant MARRIOTT INTERNATIONAL,

21  INC. hereby removes to this Court the state court action described below:

22        1.     On January 27, 2010, Plaintiff Ludmila Lisa Lukovsky filed a

23  Complaint entitled Lukovsky v. Marriott International, Inc., et al., Case No.

24  BC430758, in the Superior Court of the State of California in and for the County of

25  Los Angeles.  A true and correct copy of the Complaint is attached as Exhibit A.

26        2.     The first date upon which Defendant received a copy of the Complaint

27  was February 2, 2010, when Defendant's agent was served with the Summons and

28  Complaint by personal service.  A true and correct copy of the Summons is attached

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP

4836-3134-8229.1                        -1-

1 | as Exhibit B.

2 |     3.     Defendant has not yet appeared in the State Court action.

3 |     4.     This action is a civil action of which this Court has original jurisdiction

4 | under U.S.C. § 1332 and which may be removed to this Court on diversity of

5 | citizenship grounds as set forth in 28 U.S.C. § 1441(a-b) in that it is a civil action

6 | between citizens of different states and the matter in controversy exceeds the sum of

7 | $75,000, exclusive of interest and costs. Specifically, Plaintiff seeks damages for

8 | lost wages, benefits and additional amounts of money, medical expenses and

9 | emotional and physical distress pursuant to the first cause of action for Age

10 | Discrimination; the second cause of action for Age Harassment; the third cause of

11 | action for Sexual Orientation Discrimination; the fourth cause of action for Sexual

12 | Orientation Harassment; the fifth cause of action for Gender Discrimination; the

13 | sixth cause of action for Gender Harassment; the seventh cause of action for Race

14 | Discrimination; the eighth cause of action for Race Harassment; the ninth cause of

15 | action for Retaliation; the tenth cause of action for Failure to Take Corrective Action

16 | to Prevent Harassment; the eleventh cause of action for Violation of *California*

17 | *Government Code* § 12950; and the twelfth cause of action for Breach of Implied

18 | Covenant of Good Faith and Fair Dealing. Plaintiff also seeks her attorneys' fees and

19 | costs and punitive damages for each of her alleged causes of action.

20 |     5.     Based upon allegations in the Complaint, Defendant is informed and

21 | believes that Plaintiff is a resident and citizen of the State of California.

22 |     6.     At all relevant times, including when the Complaint was filed,

23 | Defendant Marriott International, Inc. was and is a Delaware Corporation, with its

24 | headquarters and nerve center in the state of Maryland.

25 |     7.     The only other named defendant in the Complaint is CIM Group, L.P., a

26 | California Limited Partnership. On March 3, 2010, Plaintiff voluntarily dismissed

27 | GIM Group, L.P. from the Complaint, and it is no longer a party to the action. A true

28 | and correct copy of the Request for Dismissal is attached as Exhibit C.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP

4836-3134-8229.1        -2-
NOTICE OF REMOVAL

8.      Based upon the foregoing, the only parties to this action are Plaintiff, a citizen of California; and Marriott International, Inc., a Delaware Corporation with its principal place of business in the State of Maryland.  Accordingly, diversity is complete and removal is appropriate.

DATED:  March  4 , 2010          **LEWIS BRISBOIS BISGAARD & SMITH** LLP

By _____
                    Steven G. Gatley
                    Jerry J. Chang
                    Attorneys for Defendant
                    Marriott International, Inc.

4836-3134-8229.1

-3-

NOTICE OF REMOVAL

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP

# EXHIBIT "A"

1  Michael Waddington, Esq.  (SBN 172279)
2  LAW OFFICE OF MICHAEL WADDINGTON
   A Professional Corporation
3  9601 Wilshire Boulevard, Suite 650
   Beverly Hills, California  90210
4  Telephone:     (310) 276-4100
   Facsimile:     (310) 276-4006
5
6  Attorney for Plaintiff,
   LUDMILA LISA LUKOVSKY
7
8
9            SUPERIOR COURT OF STATE OF CALIFORNIA

10            LOS ANGELES COUNTY, CENTRAL DISTRICT

11                                      **BC 4 3 0 7 58**

   LUDMILA LISA LUKOVSKY, an individual,  )  Case No.
12                                              )
              Plaintiff,                        )  **COMPLAINT FOR DAMAGES**
13                                              )
                                                )
14            vs.                               )  **1. Violation of DFEH Act, Gov. Code**
                                                )     **§12940 *et seq.* – Discrimination Based on**
15  Marriott International, Inc., a Delaware     )     **Age.**
    Corporation; CIM Group, L.P., a California  )
16  Limited Partnership; and DOES 1 through 100,)  **2. Violation of DFEH Act, Gov. Code**
    inclusive,                                  )     **§12940 *et seq.* – Hostile Work Environment/**
17                                              )     **Harassment Based on Age.**
18            Defendants.                       )
                                                )  **3. Violation of DFEH Act, Gov. Code**
19                                              )     **§12940 *et seq.* – Discrimination Based on**
                                                )     **Sexual Orientation.**
20                                              )
21                                              )  **4. Violation of DFEH Act, Gov. Code**
                                                )     **§12940 *et seq.* – Hostile Work**
22                                              )     **Environment/Harassment Based on**
                                                )     **Sexual Orientation.**
23                                              )
24                                              )  **5. Violation of DFEH Act, Gov. Code**
                                                )     **§12940 *et seq.* – Discrimination Based on**
25                                              )     **Gender.**
26                                              )
                                                )  **6. Violation of DFEH Act, Gov. Code**
27                                              )     **§12940 *et seq.* – Hostile Work**
                                                )     **Environment/Harassment Based on**
28                                              )     **Gender.**
                                                )

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

JAN 27 2010

John A. Clarke, Executive Officer/Clerk
By _____, Deputy
     AMBER LAFLEUR-CLAYTON

1

**COMPLAINT FOR DAMAGES**

| | |
|---|---|
| ) | 7. **Violation of DFEH Act, Gov. Code §12940 *et seq.* – Discrimination Based on Race.** |
| ) | 8. **Violation of DFEH Act, Gov. Code §12940 *et seq.* – Hostile Work Environment/ Based on Race.** |
| ) | 9. **Violation of DFEH Act, Gov. Code §12940 *et seq.* – Retaliation.** |
| ) | 10. **Violation of DFEH Act, Gov. Code §12940(i) – Failure to Take Corrective Action to Prevent Harassment** |
| ) | 11. **Violation of Gov. Code §12950.** |
| ) | 12. **Tortious Termination in Violation of Public Policy.** |
| ) | 13. **Breach of Implied Covenant of Good Faith and Fair Dealing.** |

Plaintiff LUDMILA LISA LUKOVSKY, by and through her undersigned counsel, hereby files this Complaint for Damages against Defendants Marriott International, Inc. and CIM Group, L.P. (collectively "Defendants") alleging as follows:

## PARTIES

1.     Plaintiff Ludmila Lisa Lukovsky ("Ms. Lukovsky") is a Russian-American woman over forty (40) years of age, who, at all relevant times, was and is a resident of the State of California, County of Los Angeles.

2.     Defendant Marriott International, Inc. is a Delaware corporation that is licensed to do and is doing business within in the State of California, County of Los Angeles.  At all times herein mentioned Government Code sections 12940 et seq. were in full force and effect and were binding on the Defendant.  These sections require Defendant to refrain from discrimination against any employee on the basis of age, gender, sexual orientation, race, and/or retaliation, among other things.  Within the time provided by law, Plaintiff filed a complaint with the California

2

**COMPLAINT FOR DAMAGES**

Department of Fair Employment and Housing, in full compliance with these sections, and received a right-to-sue letter, a copy of which is attached as Exhibit "A."

3.      Defendant CIM Group, L.P. is a limited partnership that at all times was licensed to do and is doing business in the State of California, County of Los Angeles. At all times herein mentioned Government Code sections 12940 et seq. were in full force and effect and were binding on the Defendant. These sections require Defendant to refrain from discrimination against any employee on the basis of age, gender, sexual orientation, race, and/or retaliation, among other things. Within the time provided by law, Plaintiff filed a complaint with the California Department of Fair Employment and Housing, in full compliance with these sections, and received a right-to-sue letter, a copy of which is attached as Exhibit "B."

4.      Plaintiff is ignorant of the true names and capacities of Defendants Does 1 through 100 and therefore sues them by fictitious names. Plaintiff will seek leave to amend this complaint when the true names of the Doe Defendants have been ascertained. Plaintiff is informed and believes and on that basis alleges that the Doe Defendants were in some way responsible for, participated in or contributed to the matters and things detailed in this complaint and therefore should assume legal responsibility.

5.      Each of the Defendants and/or their predecessors, affiliates, subsidiaries and related entities, were the agents, servants, employees, fellow members, associates and/or joint-ventures of each of the other remaining Defendants. Each of the Defendants acted within the purpose and scope of the agency, employment or joint-venture, and the express and/or implied knowledge, consent, advice and/or permission of the remaining Defendants. The acts of each Defendant were approved, adopted and/or ratified by each other and together constitute a single course of conduct.

6.      Jurisdiction and Venue is proper in the Central District of Los Angeles County.

///
///
///
///

3

COMPLAINT FOR DAMAGES

## FACTS COMMON TO ALL CAUSES OF ACTION

7.      Plaintiff Ludmila Lisa Lukovsky is a heterosexual African-American woman, fifty-one (51) years of age, who, with sixteen (16) years of seniority, was laid-off.

8.      In June 1993, at the age of 36, Ms. Lukovsky began her career in the hospitality industry as an Assistant to Sales & Events Department at the Los Angeles Airport Marriott.  In November 2001, Ms. Lukovsky transferred to the Renaissance Hollywood Hotel, located at Hollywood & Highland, in order to help open the hotel and was promoted to Event Coordinator.

9.      In November 2002, Ms. Lukovsky was promoted from an Event Coordinator to a Senior Event Coordinator.

10.      In late 2006, Jeff Stutts, became the Director of Event Management.  Mr. Stutts was an openly gay white man in his mid-thirties who had been transferred from Stanford Renaissance.

11.      In April 2007, Ms. Lukovsky's hard work and dedication earned her the position of Senior Event Manager.

12.      In December 2007, it was announced that Ms. Lukovsky had won the 'roses,' as well as a monetary award in the amount of $500.00, besting the other Event Managers.

13.      In early January 2008, Mr. Stutts handpicked Josh Mathison to replace Nick Valdez as a Senior Event Manager.  Mr. Stutts had a personal relationship with Josh Mathison, the two having worked together at the Stanford Renaissance.  Mr. Mathison had been at the Stanford Renaissance since 2003, first as a Restaurant Manager (April 2003 – July 2006), then as an Event Manager (July 2006 – January 2008).  When Mr. Mathison came to the Renaissance Hollywood, he was promoted from being an Event Manager to a Senior Event Manager. Mr. Mathison was an unmarried white male in his late-twenties; Mr. Mathison's sexual orientation is unknown.  No one

4

**COMPLAINT FOR DAMAGES**

else besides Mr. Mathison was considered by Mr. Stutts to replace Nick; no one else was interviewed. It is believed that the vacancy in Nick's position was never even posted.

14.    When Nick Valdez transferred, Ms. Lukovsky became the Senior Event Manager with the most seniority.   Ms. Lukovsky believed that she would be moving into Nick's old office. Ms. Lukovsky had worked in a cubical during her entire tenure, and knew the advantages that having an office with a door would bring: the ability to communicate more effectively with clients.

15.    However, Mr. Stutts gave Nick's empty office to Mr. Mathison who had only been a Senior Event Manager for less than two months.   When Ms. Lukovsky confronted Mr. Stutts on why he gave Mr. Mathison the office and not her, Mr. Stutts responded by saying, "Josh is planning to become Director of Event Planning and you are not, right?"  To which Ms. Lukovsky replied that it was her inspiration to become the Director of Event Planning.  Mr. Mathison was de-facto promoted above Ms. Lukovsky, humiliating her in front of her co-workers.  Mr. Stutts also assigned Mr. Mathison with the additional responsibilities – such as over seeing four hourly associates -- that had been previously assigned to Nick.   It was obvious that Mr. Stutts was grooming Mr. Mathison to become a Director at the exclusion of Ms. Lukovsky.

16.    After Mr. Mathison's arrival, not only did the entire dynamics of the office change, but so did Mr. Stutts's treatment of Ms. Lukovsky.  Mr. Stutts and Mr. Mathison began spending a great deal of time together behind closed doors.  Mr. Stutts began excluding Ms. Lukovsky, further undermining her authority.  When he did speak to Ms. Lukovsky, Mr. Stutts used profanity at almost every opportunity, as well as politely insulting her.  In one conversation, Mr. Stutts told Ms. Lukovsky that he loves to bring new, young and fresh blood to the office; Ms. Lukovsky was in her early-fifties.  In another conversation, when Ms. Lukovsky mentioned to Mr. Stutts that she

**COMPLAINT FOR DAMAGES**

had just visited her daughter in New York City, Mr. Stutts told Ms. Lukovsky that he had never been to New York City, "but I hate people with accents"; Ms. Lukovsky speaks with a slight Russian accent.   Mr. Stutts would also try to make Ms. Lukovsky feel uncomfortable by inappropriately making sexual innuendos.  In speaking about an attractive production guy who was setting up for an event, in front of Ms. Lukovsky, Mr. Stutts used his hand to imitate the giving of a "blow-job."

17.     Evidence of Mr. Stutts's change of attitude toward Ms. Lukovsky can be found in her 2007 performance review, also known as Leadership Performance Process (LPP).  When Mr. Stutts gave Ms. Lukovsky her LPP covering the year 2007 (which was given to her in late February, 2008), Ms. Lukovsky received a "P." Ms. Lukovsky could not understand why she was given a "P," considering that she had been promoted in April of 2007 to Senior Event Manager, had just won the "Run for the Roses" competition, had countless Excellent Surveys, and had numerous letters of recognition for a job well done.  When Mr. Stutts told Ms. Lukovsky that she was only going to be receiving a 2.5% pay increase, Ms. Lukovsky said she was expecting to receive at least a 4% increase.  In the beginning of 2008, the General Manager, Bruce Gorelick, had informed the entire Management Staff that they would all be receiving up to a five percent (5%) pay raise.  Mr. Stutts told Ms. Lukovsky that only a few top managers get 5%.  Since 2003, when Ms. Lukovsky had become an Event Manager, Ms. Lukovsky had consistently received a 3% pay raise.

18.     To add insult to injury, when Ms. Lukovsky received her first paycheck reflecting her raise, to her surprise the dollar amount compared to her prior check was minimal.  Thinking that the mistake was an error by the payroll department, Ms. Lukovsky spoke with Sonya Perez, the Director of Human Resource Operations.  Sonya and Ms. Lukovsky had worked together for

6

**COMPLAINT FOR DAMAGES**

many years and Sonya was familiar with Ms. Lukovsky's excellent reputation; Sonya had previously nominated Ms. Lukovsky to be 'Employee of the Month.'  When Sonya checked the computer system, she showed Ms. Lukovsky that she had only received a 1.5% pay increase, not a 2.5% pay increase.  When Ms. Lukovsky told Sonya that Mr. Stutts had told her that she would be receiving a 2.5% pay increase, Sonya suggested that Ms. Lukovsky bring the matter directly to Mr. Stutts's attention.

19.     Mr. Stutts's reaction was very unpleasant.  Mr. Stutts immediately denied that he had promised Ms. Lukovsky a 2.5% pay raise, insisting that he never told her the percentage, but rather the amount.  In an angry, raised voice, Mr. Stutts accused Ms. Lukovsky of "making up" the 2.5% pay raise and said that he was not willing to fix it.

20.     When Ms. Lukovsky told Sonya about the fact Mr. Stutts had denied the correct amount for the raise, as well as the mannerism and fowl language he used, Sonya said that she would discuss the matter with Mr. Stutts.  It took a short while, but the amount was changed to 2.5%.  Ironically, although Mr. Mathison had only been a Senior Event Manager for less than a month – and had already moved into Nick's office – Mr. Stutts had given Mr. Mathison a "SP" rating and a corresponding 3.75% raise increase.

21.     After that episode, Mr. Stutts made Ms. Lukovsky's job a living hell!

22.     Ms. Lukovsky was no longer given the necessary support for her events.  In March 2008, Ms. Lukovsky was the responsible for the DFCon Conference.  The year before, the event was such a success that the DFCon Conference Director, Dennis A. Vitrella, wrote a letter to GM Gorelick thanking the entire staff for a 'five-star performance' and specifically praising Ms. Lukovsky: "Lisa Lukovsky most ably directed the show for you and was a champion advocate for us."  Sean Steenson, the Director of Event Management and Ms. Lukovsky's direct supervisor,

sent Ms. Lukovsky an e-mail: "Nice job Lisa, if you can handle DFCon, you can handle anything."

23.    However, during the 2008 DFCon Conference, not only was the necessary support not given to Ms. Lukovsky, someone seemed to be deliberately sabotaging the event.  For example, the night before an early morning meeting, Ms. Lukovsky inspected the room configuration before she left for the evening.  When she returned early the next morning, the room had been reconfigured differently.  It's unknown who told housekeeping to reconfigure the room.  What is known, though, is that after the event, Mr. Stutts deliberately excluded Ms. Lukovsky from any contact with the Mr. Vitrella or any issue regarding DFCon.  Shortly thereafter, Mr. Stutts announced that he was reassigning the 2009 DFCon Conference to Mr. Mathison, who had been a Senior Event Manager for less than a few months.  Mr. Stutts also assigned another one of Ms. Lukovsky's events, the Diabetic Foot Conference, to Mr. Mathison.

24.    After Mr. Stutts hired Eric Gaffney, a handsome charming lad in his mid-twenty who, like Mr. Stutts, was of the homosexual persuasion, Mr. Stutts's treatment of Ms. Lukovsky went from bad to worse.  Mr. Gaffney, who was a few years younger than Ms. Lukovsky's daughter, and who had absolutely no previous education or experience within the hospitality industry, began his employment as a Senior Event Manager in April 2008.  Despite the fact that young Mr. Gaffney was replacing Courtney, an Event Manager, Mr. Stutts gave him the Senior Event Manager title upon hiring, a title that took Ms. Lukovsky over sixteen (16) years of hard work and dedication to earn.  It is also believed that Mr. Gaffney's salary was greater than Ms. Lukovsky's salary.  When Ms. Lukovsky asked Mr. Stutts why it was taking so long for Mr. Gaffney to begin his job, Mr. Stutts stated "Eric is trying to make sure the salary he is getting is right for him.  You know how young people are nowadays."  Because Mr. Gaffney's resume is

8

COMPLAINT FOR DAMAGES

void of any dates, it is unknown how long Mr. Gaffney was even out of school or his exact qualifications.   What is known, however, is that Mr. Gaffney was competing for the position with Yael Oved, a young woman with seven (7) years of experience in the hospitality industry, three of which were as the Convention Service Manager at the Hilton Universal Hotel, which is exactly the same duties as an Event Manager, albeit with a different title.

25.     It is still unknown why Mr. Gaffney was given the title of Senior Event Manager when he was replacing Courtney, an Event Manager.  It is also curious as to why Mr. Stutts didn't follow Marriott's long-term tradition of 'promotion from within' and offer the position of Senior Event Manager to Stephanie, who had already been an Event Manager for at least two years.

26.     Although Mr. Stutts and Mr. Mathison still met frequently behind closed doors, Mr. Gaffney quickly replaced Mr. Mathison as Mr. Stutts's favorite.  Each morning, Mr. Stutts would begin his day at the office by immediately greeting Eric, either complimenting him or touching him or both.  Even though Ms. Lukovsky's cubical was directly across from Mr. Gaffney's, Mr. Stutts would completely ignore Ms. Lukovsky.  Mr. Stutts let everyone know who his favorites were – and weren't.  Ms. Lukovsky was in the "weren't" category.

27.     Almost every day, Mr. Gaffney would come in at least 25 to 30 minutes late, and then disappear, leaving his cubical looking as though he was still on site.  Apparently, Mr. Stutts condoned Mr. Gaffney's behavior, because Mr. Gaffney showed Ms. Lukovsky a 'secret' entrance and exit to the hotel that Mr. Stutts had shown him and told him to use.  Ms. Lukovsky's work ethic was a bit more old-fashioned; she never called sick in her entire career and was never late to work.  Once, Ms. Lukovsky worked twenty-three days straight without a day off.

28.     As Mr. Stutts's and Mr. Gaffney's familiarity increased, their common sexual orientation became more open.  For example, Mr. Gaffney had many toys on top of his cubical

and Mr. Stutts would consistently make jokes about Monkey's ass.  Mr. Stutts's fondness of Mr. Gaffney also increased, as they would frequently go to lunch or grab coffee within the Hollywood and Highland complex.  Even though Mr. Mathison was sometimes included, Ms. Lukovsky never was.

29.     On June 1, 2008, in recognition of her fifteen (15) years of service, Ms. Lukovsky received a letter a signed letter from Mr. J.W. Marriott which stated, in part: "I have always said that Marriott has the finest work force in the hospitality industry.  In fact, the Marriott "spirit to serve" starts with our associates and has been built around an enduring commitment to excellence. [] You are a valued member of the dedicated and talent team of associates who make this company great.  We are proud to honor your Marriott career milestone.  Please accept my heartfelt thanks for the many fine contributions you have made to our company."

30.     Mr. Stutts's fondness for Mr. Gaffney seemed to grow in proportion to his aggression toward Ms. Lukovsky.  It seemed as Ms. Lukovsky could do no right.  If fact, Ms. Lukovsky was reprimanded by Mr. Stutts for an event that she wasn't even present.

31.     On Monday, June 23, 2008, Ms. Lukovsky had a large pre-planning visit (a/k/a 'site') with the Society of Motion Pictures Television Engineers (SMPTE).  Ms. Lukovsky had also been ordered to Jury Duty that same day.  When Ms. Lukovsky brought this conflict to Mr. Stutts, he told her to ask Mr. Mathison to handle the site in her absence.  Ms. Lukovsky explained to Mr. Mathison in detail the logistics and flow of the site and gave him all the necessary documentation (including the contract).  Ms. Lukovsky stressed to Mr. Mathison the importance of not only the site, but the importance of the client.

32.     Per Mr. Stutts's instructions, Ms. Lukovsky told Mr. Mathison to show the SMPTE representatives the entire space first.  The representatives needed to take measurements of the

10

**COMPLAINT FOR DAMAGES**

rooms. Although Mr. Stutts was on numerous e-mails between Ms. Lukovsky and Debbie Ayala (Director of Sales) asking if the space could be shown while Mr. Stutts's group was setting up on the same day in the same room, Mr. Stutts deliberately ignored the request, never mentioning to anyone that the space would not be available.

33.     The next day, on Tuesday, June 24, when Ms. Lukovsky spoke to Mr. Mathison about the site, Mr. Mathison told Ms. Lukovsky that it was a disaster because Mr. Stutts's group refused to allow the SMPTE representatives to take the necessary measurements of the space. Shortly thereafter, Mr. Stutts called Ms. Lukovsky to his office and yelled at her, telling her that the hotel had to pay $3,000 in air fair to fly two of the representatives back and it was her fault. Mr. Stutts was vicious. He told Ms. Lukovsky that her name would now be associated with the word 'problem' and that 'problem' was what people from corporate would say about her and her performance.     Mr. Stutts then denied that Ms. Lukovsky gave Mr. Mathison any type of instructions on how to conduct the site. Ms. Lukovsky said that was not true, that she had given Mr. Mathison the appropriate instructions, and suggested that they both speak to Mr. Mathison; Mr. Stutts refused.   Mr. Stutts then told Ms. Lukovsky that she probably doesn't like her job and that she was not 'engaged.' He asked Ms. Lukovsky if she was sure that this was the right job for her, that there were a lot of other options everywhere. Ms. Lukovsky responded by saying that she loved her job and to please do not put words in her mouth.

34.     Being wrongfully accused, Ms. Lukovsky couldn't sleep that night. The next day, Ms. Lukovsky sent him an e-mail asking him when would be a good time to talk. Mr. Stutts did not respond. A short time after that, however, Mr. Stutts brought over John Eule, who was the Director of Event Technology and Ms. Lukovsky's personal friend, to Ms. Lukovsky's cubical and in front of all of her co-workers asked Ms. Lukovsky in a very angry tone what she wanted to

11

**COMPLAINT FOR DAMAGES**

talk about.  Ms. Lukovsky asked to speak with Mr. Stutts in private, but Mr. Stutts refused, abruptly replying "No, talk now!"  He stood in front of Ms. Lukovsky's cubical for approximately 20 minutes, all the while bullying and yelling at her.  Each time Ms. Lukovsky attempted to defend herself, Mr. Stutts only became more enraged.  Eventually, he would not even allow Ms. Lukovsky to speak.  When he accused Ms. Lukovsky of not sending a "snapshot" report to the entire hotel (on a completely different issue), Ms. Lukovsky said that she did.  After Mr. Stutts left, a few people came to Ms. Lukovsky's cubical to ask her what just happened.  Later that day, Ms. Lukovsky provided Mr. Stutts with proof that she had in fact sent a "snapshot" report to the entire hotel.  Mr. Stutts's reply was curt: "Do you like to put more gasoline on the fire?  I know this is the way you are."

35.     Never in her entire career – her entire life, in fact – had Ms. Lukovsky complain to Human Resources about her job, much less her manager's harassing treatment.  And, but for fear of retaliation, she would have gone sooner.  But know Mr. Stutts's behavior was affecting her physically, emotionally and mentally.  Ms. Lukovsky was unable to sleep at night.  She began having head and neck pain.  However, Mr. Stutts's foul language had become so raunchy – he made sexual jokes about a monkey's ass in reference to one of the figurines that Mr. Gaffney displayed in his cubical – his words had become so degrading – "God damn it, Lisa, I'm the fucking boss here, I'm making the fucking rules here" – that Ms. Lukovsky felt she was left with no alternative but to inform Human Resources.

36.     With tears in her eyes, Ms. Lukovsky told Sonya Perez, the Director of Human Resource Operations, how Mr. Stutts had been harassing her at every opportunity and that she could no longer take it.  Ms. Lukovsky was embarrassed even to tell Sonya what Mr. Stutts had said to her.  Ms. Lukovsky couldn't believe, having worked for Marriott for so many years, that

Mr. Stutts, an Executive Member of Renaissance Hollywood's Team, could act and speak so unprofessionally.   Sonya said that nobody, especially 'Executives,' had a right to talk to any employee using the language that Mr. Stutts used, or treating Ms. Lukovsky the way Mr. Stutts did.   However, Sonya discouraged Ms. Lukovsky from filing a formal complaint against Mr. Stutts for fear that Mr. Stutts might retaliate; Ms. Lukovsky feared that her working environment might get even more hostile.   Instead, Sonya suggested that Ms. Lukovsky personally speak with Mr. Stutts, explain to him the pain that he is inflicting on her and to ask him to treat her with respect.

37.    Ms. Lukovsky did as Sonya suggested.   But when Ms. Lukovsky went to Mr. Stutts's office and politely plead her case, they were interrupted by a telephone call.   Mr. Stutts asked Ms. Lukovsky if he could get back with her; he never did.

38.    After that, Mr. Stutts both completely ignored and excluded her or he demeaned and belittled her.    He was very rude and vulgar; if Ms. Lukovsky would even try to share her opinion with him and have the conversation about it, he would say, "I don't give a damn."  Mr. Stutts's use of fowl language, combined with his constant smirks, laughs, and sarcastic remarks, was hostile and horrible.   As it was designed to do, it made Ms. Lukovsky feel very unwanted. What made it worse was that Mr. Gaffney, who had been there for only a few months, could do absolutely no wrong.

39.    Despite Mr. Stutts's treatment, Ms. Lukovsky kept receiving excellent records and letters from her clients, recognizing and thanking me for the great job.   Ironically, Ms. Lukovsky would hear verbal and written praise from her clients, all the while being belittled and mistreated by her own boss. Regardless Mr. Stutts's efforts to isolate her from the rest of the team, Ms. Lukovsky continued to perform her job, since it was my passion and love of my life!

40.    Ms. Lukovsky cried, Ms. Lukovsky prayed, but Ms. Lukovsky stayed.

41.    Ms. Lukovsky also sought medical attention.   In July, Ms. Lukovsky was having such pain, such sleepless nights, that she saw her primary physician.   He diagnosed Ms. Lukovsky as suffering from an "anxiety disorder" and treated her with Ambian and Lorezapan.   Ms. Lukovsky also began receiving massages for the tension in her shoulders and neck.

42.    The dispiriting treatment between Mr. Gaffney and Ms. Lukovsky continued.   Mr. Gaffney got the good assistant; Ms. Lukovsky got the bad one.   Mr. Gaffney's assistant was Dominique Redmond; Ms. Lukovsky's assistant was Ixia McGee.   When Ms. Lukovsky asked Mr. Stutts if she could have Dominique instead of Ixia, Mr. Stutts refused, telling her that he was the boss, he made the rules.   Despite Ms. Lukovsky's numerous complaints about Ixia, Mr. Stutts refused to reprimand her.

43.    One September morning, during Public Radio Program Directors Association (PRPD) meeting, Ms. Lukovsky had asked Ixia if she would please come in early that day, as Ms. Lukovsky had between seven and eight events.   Instead of coming in early, Ixia was a no-show.   When Ms. Lukovsky complained to Mr. Stutts and pleaded for help, Mr. Stutts ignored her, telling her to "go and fix it" and to "stop coming to [his] office."   Mr. Stutts immediately went into Mr. Mathison's office and closed the door, again excluding Ms. Lukovsky.   Mr. Mathison then came to Ms. Lukovsky and told her that Mr. Stutts would talk to her later about Ixia.   Ms. Lukovsky could not understand why Mr. Stutts could not have told her that himself.

44.    Later that day, Mr. Stutts called Ms. Lukovsky into his office and informed her that Ixia would only get a verbal, not a written, warning.   When Ms. Lukovsky expressed her opinion that Ixia should get a written warning because Ms. Lukovsky had a tremendously difficult day

14

without any help, Mr. Stutts responded that he didn't care what Ms. Lukovsky thought, that he was the boss.

45.     Around seven that night, after having worked for over twelve hours straight, as Mr. Stutts ignored Ms. Lukovsky as he walked passed her cubical, Ms. Lukovsky mentioned that it would be nice if he would ask her about her events.   Mr. Stutts did not reply.   About a half an hour later, while Ms. Lukovsky was standing at the printer, Mr. Stutts approached her and said sarcastically that he does ask her about her groups.  Ms. Lukovsky, unable to reply for fear of crying, simply returned to her cubical only a few feet away.   About a half an hour later, Ms. Lukovsky received an e-mail from Mr. Stutts asking to see him in his office.  When she arrived, she was surprised to see Debbie Ayala, Director of Sales, also in his office.  Mr. Stutts explained that Debbie was there to serve as a witness to what Ms. Lukovsky had just done, but Ms. Lukovsky did not understand what she was talking about.  He told Ms. Lukovsky that she showed him the act of insubordination by not responding to him and that he could write her up.  Ms. Lukovsky, again, was unable to respond because she would have cried; Mr. Stutts wouldn't write Ixia up for coming into work late and then leaving within the hour, despite Ms. Lukovsky's request, but he was threatening to write Ms. Lukovsky up for walking a few feet to her cubical without responding to his sarcastic remark.  Mr. Stutts then asked Ms. Lukovsky point blank, "Once again, are you sure you can handle this job?"  Ms. Lukovsky replied "Absolutely."   Ms. Lukovsky went back to her cubical and continued working until ten p.m. to make certain that her events for the next day ran smoothly.

46.     The next day, Ms. Lukovsky again went to Human Resources and again spoke with Sonya.  After relaying to Sonya the previous day's event, Sonya said that she was unable to get Ms. Lukovsky a new assistant – that was Mr. Stutts's authority.  Ms. Lukovsky asked Sonya if she

could do anything regarding Mr. Stutts's treatment of her, to stop Mr. Stutts from bringing humiliating her in front of witnesses, to stop Mr. Stutts from making sarcastic comments, to stop Mr. Stutts from treating her so badly, to stop Mr. Stutts from not supporting her and her events, to have Mr. Stutts stop treating her differently.  Sonya gave Ms. Lukovsky a tissue to wipe her eyes, a big hug, and a promise to speak with Mr. Stutts.

47.    Apparently Sonya did speak with Mr. Stutts.  The good news was that Mr. Stutts stopped using profanity, stopped degrading her, stopped humiliating her.  The bad news was that the reason Mr. Stutts stopped using profanity, stopped degrading her and stopped humiliating her was because Mr. Stutts stopped acknowledging that Ms. Lukovsky even existed.  When he passed by, he would not speak to her, simply nod, and then go spend time chatting up his favorites, Mr. Gaffney and Mr. Mathison, and occasionally Stephanie.   The war zone that Mr. Stutts had created ended and his Iron Curtain fell.

48.    A few months later, Mr. Stutts finally fired Ixia, but only after she had screwed up one of his events.

49.    Ms. Lukovsky's heart was telling her to keep her head down and do the job that she loved to the best of her ability.   And that's what she did.   But it wasn't easy.   Ironically, during the day Ms. Lukovsky couldn't get Mr. Stutts to acknowledge her, but at night she couldn't sleep because Mr. Stutts wouldn't leave her nightmares.

50.    At work, Mr. Stutts sent out an e-mail, that he cc'd to the entire department, announcing the billing scores among the Event Managers; Ms. Lukovsky received a zero.  When Ms. Lukovsky asked Mr. Stutts how that could happen, Mr. Stutts replied Ms. Lukovsky should "learn from Eric."  Ms. Lukovsky pointed out that it would be impossible for her to receive a "zero" in billing because that would mean that no client paid anything on any of her events during

16

**COMPLAINT FOR DAMAGES**

the time period.  Also, Ms. Lukovsky brought Sara as an example of how when Sara was the Billing Coordinator that there was never any problem.  Now that another Jeff – Jeff Garcia – was the Billing Coordinator, Ms. Lukovsky was having problems – she was the only one having problems.  Mr. Stutts and Jeff Garcia had more in common than just their names – they were both homosexuals.  Jeff Garcia, who was in his late twenties, had taken the MCRB test to become a first time manager three times and had failed each time.  It was no secret that Jeff Garcia's objective was to become an Event Manager.

51.    Around this time, Mr. Stutts promoted Stephanie from Event Manager to Senior Event Manager.  Although Stephanie had told Mr. Stutts that she did not want to be promoted – that she was find with being an Event Manager – Mr. Stutts insisted that she accept the new title. Keep in mind that only a few months earlier, Mr. Stutts had given Mr. Gaffney the title of Senior Event Manager when he could have easily have given the title to Stephanie, who was already doing the duties of a Senior Event Manager. Further, Stephanie served completely different market than Ms. Lukovsky, Mr. Mathison or Mr. Gaffney.  Stephanie served the social market (weddings, birthdays, anniversaries), while Ms. Lukovsky, Mr. Mathison or Mr. Gaffney served only corporate clients.  It is also important to note that Stephanie had just announced her pregnancy.  At the time that Ms. Lukovsky was laid-off, Stephanie was eight months pregnant.  Three weeks after Ms. Lukovsky was laid-off, Ms. Lukovsky went on four months maternity leave.   When she returned, Stephanie was allowed to work a couple of days from home.

52.    In retrospect, it also seemed odd to Ms. Lukovsky that during one of the worst economic downturns that the budget suddenly allowed for such an increase.   Knowing that the global economy was in an economic free-fall, it could be argued that Mr. Stutts went out of his

way to make certain that everyone in his Department had the exact same title.  In event that a lay-off occurred, everyone would be on equal ground.

53.     Despite that fact that Mr. Stutts was assigning the most outdated contracts to Ms. Lukovsky – contracts that had been on the books for quite some time and the original sales person was no longer available to answer questions regarding the contract or the client – Ms. Lukovsky still did her job with the same dedication that she had always shown her clients.  For example, in September 2008, Mr. Stutts assigned Ms. Lukovsky the Western Association School Colleges (WASC)'s contract that the original sales person was no longer with the hotel because the contract had been assigned in 2006.   For the months prior to the scheduled event date of April 2009, Ms. Lukovsky invested an enormous amount of time and effort in order to insure that the event was a success.   During Ms. Lukovsky's forced vacation period, she interrupted her time off to come in to perform a previously schedule site in order to accommodate the client's five representatives.  Ms. Lukovsky was with them from 10 a.m. to 8 p.m.   Ms. Lukovsky was laid-off before the event occurred; Mr. Gaffney was re-assigned the client.

54.     In early January 2009, GM Gorelick assured the entire management team that Renaissance Hollywood Hotel was not going to be affected by current economy layoffs and that the Hotel was on the way to recovery.  The GM's announcement reassured Ms. Lukovsky of the security of her job.  The GM's only request was that managers use their vacation time to help the budget.  At the time, since Ms. Lukovsky was such a workaholic, she had accumulated fifty days of vacation, the maximum amount allowed.

55.     After the GM's reassurance, additional reassurance came directly from Mr. Stutts, when he announced during an Event Management meeting that the Event Managers should feel secure and confident in their job security.  Mr. Stutts also mentioned that if need be, he would

18

**COMPLAINT FOR DAMAGES**

request that the all the Event Managers to work four days a week instead of five days a week.  Mr. Stutts stressed that such action would be the last resort and he was not planning to take that route. In any event, Ms. Lukovsky was confident that she had been doing a good job.  She did well in her 2008 performance review.  Also, during 2008, Ms. Lukovsky received countless praise for her efforts.

56.    From January 1 to March 26, 2009, the day that Ms. Lukovsky was laid-off, Mr. Stutts mandated that Ms. Lukovsky take nineteen of her fifty days off during the first quarter. Although Ms. Lukovsky had shown Mr. Stutts her calendar for those three months and had pleaded with him to allow her to take less time off due to the amount of scheduled events, Mr. Stutts said that he had no choice.  Mr. Stutts instructed her not to show up on days during her events; it was unheard of for a manager not to be present during on of their events.   In order to ensure that her events went well and that her clients were properly serviced, Ms. Lukovsky was working from home on her cell phone and laptop since she was unable to come to the office.

57.    On Friday, February 20, 2009, the Friday before the Sunday Oscars, Mr. Stutts mandated Ms. Lukovsky to take the day off.   When she woke up the next day, she looked at her cell phone and saw that Mr. Stutts had paged her at 10:45 p.m. night before.  She immediately paged him back, but he did not reply.   At approximately 10 a.m., Mr. Stutts came to Ms. Lukovsky's cubical very angry and asked her why she didn't answer her page the night before. When she explained that she didn't know that she was to be on call when he had forced her to take the day off, and also explained that she was asleep when he paged, he told her that during Oscar weekend, she must be available 24/7 and that the entire Hotel was looking for her on Friday.  A bit later, Mr. Stutts was upset at Ms. Lukovsky because she had put a 'comp' day on the calendar – she already had too many vacation days and was running out of time to use them.  Not certain

what choices she had, and not certain what he wanted from her, the only solution she could think of was to offer to work for free that day.  Mr. Stutts agreed.   Ms. Lukovsky worked fourteen (14) hours that day without compensation.

58.    Despite the handicap of not being able to work a regular schedule, Ms. Lukovsky still managed to have excellent events.   One such event was the Sexy Hair Convention, in which she not only received an "Excellent" rating, but praise: "Lisa Lukovsky was my event contact and I feel have done it without her.   She was ALWAYS accessible, always handled requests immediately, and ALWAYS followed up afterwards." Another event was Daiichi Sankyo, in which Ms. Lukovsky received another "Excellent" and more praise: "It was a very nice touch on the part of Lisa to come and greet me at the start of my meeting."   Yet another event in which Ms. Lukovsky received another "Excellent" was from the Shopping Center Event, in which the client sent an e-mail praising Ms. Lukovsky, which Ms. Lukovsky forwarded to GM Gorelick, Mr. Stutts, and Mark Evens, the sales manager for that event.   Only Mark acknowledged Ms. Lukovsky's great job.  On the last day of the event for 'JUMP – Break the Floor Production,' the client sent Ms. Lukovsky an edible fruit arrangement in appreciation of her work; however, Ms. Lukovsky never saw it because she told not to be in the office.  The previous year, the same client gave her the same edible arrangement in appreciation for her work.   One of the last events that Ms. Lukovsky worked on was for HARPO, Oprah's production company.   This was the second non-consecutive year that Ms. Lukovsky worked on the event.  Two days after Ms. Lukovsky was laid-off, she received an "O" Bag, along with a hand-written note that said:   "Thank you so much for all of your hard work with the "Oprah After Oscar Special." The show was a great success and we couldn't have done it without your support. Ms. Lukovsky was receiving tremendous feedback

20

**COMPLAINT FOR DAMAGES**

from the customers, so much so that in January 2009 Mr. Stutts told her in an uncomplimentary tone: "I am tired to hear customers say 'I love Lisa.'"

59.    In January 2009, Adriane Tomik, who had been Ms. Lukovsky's assistant only a few years earlier, but who had managed to become a Banquet Manager, was told that her position was going to be eliminated. Adriane was in her late-twenties and had only been in the position for less than a year. Adriane was also a close personal friend of the GM's fiancée, Sara Calderon. Although Adriane had absolutely no experience, GM Gorelick personally offered her the position of a Sales Manger. If you look on GM Gorelick's Facebook page, one can see a picture of Adriane who is listed as one of GM Gorelick's "best friends."

60.    While Adriane was becoming a Sales Manager, Mr. Stutts had begun taking way dome of Ms. Lukovsky's duties. He assigned Ms. Lukovsky's task of generating SFA Score Card Reports for the entire Sales and Events Department to Debbie Ayala, Director of Sales and the woman who Mr. Stutts had called in as a witness the previous September when he threatened to write Ms. Lukovsky up for the act of insubordination. One week before Ms. Lukovsky was laid-off, she was supposed to conduct the Event Management meeting. However, Mr. Stutts cancelled the Wednesday via e-mail and stated that he would individually speak with the members of the Event Team on Friday. Friday was one of Ms. Lukovsky's forced days off.

61.    The last time that Ms. Lukovsky spoke to Mr. Stutts was a week before she was laid-off. Since Mr. Stutts had been off the previous week, and Ms. Lukovsky was going to be off the following week, Ms. Lukovsky sent him an e-mail asking to speak to him before she left for the week. Mr. Stutts replied that she should go on her vacation and that they would talk when she returned for vacation. Nonetheless, Ms. Lukovsky went to his office to touch base before she left.

62.     It is unknown exactly when Marriott decided to decide to layoff Ms. Lukovsky. But what is known is that Ms. Lukovsky was given absolutely no warning whatsoever.  The following Thursday, when she returned from vacation, Ms. Lukovsky attended the scheduled revenue management meeting.  Despite attending a meeting with Mr. Stutts, he refused to even speak a word to Ms. Lukovsky the entire day.  At 5:00 p.m., Ms. Lukovsky received a telephone call from Rick Spade, Director of Human Resources.   Rick Spade is also a homosexual.  When she went to his office, as requested, he had paperwork and front of him and a witness in the room. Rick told her that her job was going to be eliminated on March 26th, but that she did not have to come into the office.  She told him that she had meetings scheduled with clients regarding events that she had spent months working on.  Either Mr. Mathison or Mr. Gaffney was assigned her events.

63.     At the time she was laid-off, Ms. Lukovsky was the Senior Event Manager with the most seniority: Ms. Lukovsky had been a Senior Event Manager for 23 months (April 2007 to March 2009); Josh had been a Senior Event Manager for 13 months (February 2008 to March 2009); Mr. Gaffney had been a Senior Event Manager for 11 months (April 2008 to March 2009); and, Stephanie had been a Senior Event Manager for 6 months (October 2008 to March 2009).  In regards to overall tenure: Ms. Lukovsky had 16 years (June 1993); Josh had seven years (March 2002); Mr. Gaffney was one month shy of a year (April 2008); and, Stephanie had eight years (November 2001).  All totaled, Ms. Lukovsky not only had twice the experience of the next in seniority, but she also had worked the same number of years that the others had worked combined.

64.     Ms. Lukovsky was also the oldest manager in the entire Hotel.

65.     For Ms. Lukovsky, it wasn't just bad: "It was worst than when my parents died." During that half-hour that she was given by Rick Spade, Ms. Lukovsky called her ex-husband, the

22

COMPLAINT FOR DAMAGES

father of her daughter, and "cried and cried and cried."  She did not have a chance to say 'goodbye' to anyone in the property or take her personal belongings; the treatment that she received after sixteen (16) years of devotion and hard work, to her, was the ultimate humiliation and betrayal.  She felt like a criminal serving a life sentence for a crime she did not commit.  As she left the building for the last time, she saw Ronnie Lixton, Assistant Director of Security, and he asked her what happened.  He only said: "Why you, Lisa?  NO WAY!  You should be the last person they did that to!"  At nine that evening, Mr. Stutts sent Ms. Lukovsky an e-mail explaining that he was busy with AMPAS and did not have a chance to talk to her before she left.  He asked for her to call him so that they could "chat."  Ms. Lukovsky never called him back to "chat."

66.     Perhaps one of the reasons that being laid-off has affected Ms. Lukovsky so dramatically is because she willingly drank the cool-aid Marriott served.  Ms. Lukovsky truly believed in the "Spirit to Serve" philosophy.  Ms. Lukovsky gave almost sixteen (16) years of her life to Marriott.  She performed well.  She never missed one day of work.  She never called in sick.  She worked ten to fifteen hours a day.  Ms. Lukovsky sacrificed her personal life, so much so that her job became her identity.  Ms. Lukovsky had planned to work for Marriott at least another ten (10) years and retire with the company.  Before Mr. Stutts came aboard, the Renaissance Hollywood was her home, her family; Ms. Lukovsky may have slept at home, but she lived in the hotel.

## FIRST CAUSE OF ACTION
### Violation of DFEH Act, Gov. Code, §12940 *et seq.*
### Discrimination Based on Age
### [As Against All Named Defendants]

67.     The allegations set forth in Paragraphs 1 through 66 are re-alleged and incorporated herein by reference.

68.     Defendants, and each of them, were employers.

23

**COMPLAINT FOR DAMAGES**

69.    Ms. Lukovsky was an employee of Defendants.

70.    Defendants discharged Ms. Lukovsky.

71.    Ms. Lukovsky's protected status based upon her age was a motivating reason for the discharge.

72.    Such discrimination is in violation of DEFH Act, Gov. Code §12940 et seq. and has resulted in damage and injury to Ms. Lukovsky as alleged herein.

73.    As a proximate result of the Defendants' willful, knowing, and intentional discrimination against Ms. Lukovsky, she has sustained and continues to sustain substantial losses in earnings, career opportunities, and other employment benefits, the precise amount of which will be proved at trial.

74.    As a proximate result of the Defendants' willful, knowing, and intentional discrimination against Ms. Lukovsky, she has suffered and continues to suffer humiliation, emotional distress, anger, loss of enjoyment of life, embarrassment, anxiety, and mental and physical pain and anguish, all to her damage in a sum according to proof.

75.    Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, and with the wrongful intention of injuring Ms. Lukovsky.    Alternatively, Defendants' despicable conduct was carried out in conscious disregard of Ms. Lukovsky's rights. Defendants' conduct was carried out by a managing agent, or an officer, a director, or a managing agent of Defendants who had advanced knowledge of the unfitness of its decision-maker and employed the decision-maker with a conscious disregard of Ms. Lukovsky's rights and/or authorized and/or ratified the decision-maker's conduct.    As a result of the Defendants' conduct, Ms. Lukovsky is entitled to recover punitive damages in an amount commensurate with each Defendant's wealth.

76.    In light of the Defendants' willful, knowing, and intentional discrimination against Ms. Lukovsky, she seeks equitable relief, including, but not limited to, the return to her previous position, with full employment benefits as if she were never terminated.

77.     Ms. Lukovsky has incurred and continues to incur legal expenses and attorney fees. Ms. Lukovsky is presently unaware of the precise amount of these expenses and fees and prays leave of court to amend this complaint when the amounts are more fully known.

### SECOND CAUSE OF ACTION
**Violation of DFEH Act, Gov. Code, §12940 *et seq.***
**Hostile Work Environment/Harassment Based on Age**
**[As Against All Named Defendants]**

78.     The allegations set forth in Paragraphs 1 through 77 are re-alleged and incorporated herein by reference.

79.     Ms. Lukovsky was an employee of Defendants.

80.     Ms. Lukovsky was subjected to unwanted harassing conduct because of her age.

81.     The harassing conduct was so severe, widespread, or persistent that a reasonable person in Ms. Lukovsky's circumstances would have considered the work environment hostile or abusive.

82.     Ms. Lukovsky considered the work environment hostile or abusive.

83.     A supervisor with actual or reasonably perceived authority over Ms. Lukovsky engaged in the conduct.

84.     Such discrimination is in violation of DEFH Act, Gov. Code §12940 et seq. and has resulted in damage and injury to Ms. Lukovsky as alleged herein.

85.     As a proximate result of the Defendants' willful, knowing, and intentional harassment of Ms. Lukovsky, she has sustained and continues to sustain substantial losses in earnings, career opportunities, and other employment benefits, the precise amount of which will be proved at trial.

86.     As a proximate result of the Defendants' willful, knowing, and intentional harassment of Ms. Lukovsky, she has suffered and continues to suffer humiliation, emotional distress, anger, loss of enjoyment of life, embarrassment, anxiety, and mental and physical pain and anguish, all to her damage in a sum according to proof.

87.     Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, and with the wrongful intention of injuring Ms. Lukovsky.   Alternatively,

25

Defendants' despicable conduct was carried out in conscious disregard of Ms. Lukovsky's rights. Defendants' conduct was carried out by a managing agent, or an officer, a director, or a managing agent of Defendants who had advanced knowledge of the unfitness of its decision-maker and employed the decision-maker with a conscious disregard of Ms. Lukovsky's rights and/or authorized and/or ratified the decision-maker's conduct. As a result of the Defendants' conduct, Ms. Lukovsky is entitled to recover punitive damages in an amount commensurate with each Defendant's wealth.

88.     In light of the Defendants' willful, knowing, and intentional harassment of Ms. Lukovsky, she seeks equitable relief, including, but not limited to, the return to her previous position, with full employment benefits as if she were never terminated.

89.     Ms. Lukovsky has incurred and continues to incur legal expenses and attorney fees. Ms. Lukovsky is presently unaware of the precise amount of these expenses and fees and prays leave of court to amend this complaint when the amounts are more fully known.

### THIRD CAUSE OF ACTION
**Violation of DFEH Act, Gov. Code, §12940 *et seq.***
**Discrimination Based on Sexual Orientation**
**[As Against All Named Defendants]**

90.     The allegations set forth in Paragraphs 1 through 89 are re-alleged and incorporated herein by reference.

91.     Defendants, and each of them, were employers.

92.     Ms. Lukovsky was an employee of Defendants.

93.     Defendants discharged Ms. Lukovsky.

94.     Ms. Lukovsky's protected status based upon her sexual orientation was a motivating reason for the discharge.

95.     Such discrimination is in violation of DEFH Act, Gov. Code §12940 et seq. and has resulted in damage and injury to Ms. Lukovsky as alleged herein.

96.     As a proximate result of the Defendants' willful, knowing, and intentional discrimination against Ms. Lukovsky, she has sustained and continues to sustain substantial losses

26

**COMPLAINT FOR DAMAGES**

in earnings, career opportunities, and other employment benefits, the precise amount of which will be proved at trial.

97. As a proximate result of the Defendants' willful, knowing, and intentional discrimination against Ms. Lukovsky, she has suffered and continues to suffer humiliation, emotional distress, anger, loss of enjoyment of life, embarrassment, anxiety, and mental and physical pain and anguish, all to her damage in a sum according to proof.

98. Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, and with the wrongful intention of injuring Ms. Lukovsky. Alternatively, Defendants' despicable conduct was carried out in conscious disregard of Ms. Lukovsky's rights. Defendants' conduct was carried out by a managing agent, or an officer, a director, or a managing agent of Defendants who had advanced knowledge of the unfitness of its decision-maker and employed the decision-maker with a conscious disregard of Ms. Lukovsky's rights and/or authorized and/or ratified the decision-maker's conduct. As a result of the Defendants' conduct, Ms. Lukovsky is entitled to recover punitive damages in an amount commensurate with each Defendant's wealth.

99. In light of the Defendants' willful, knowing, and intentional discrimination against Ms. Lukovsky, she seeks equitable relief, including, but not limited to, the return to her previous position, with full employment benefits as if she were never terminated.

### FOURTH CAUSE OF ACTION
**Violation of DFEH Act, Gov. Code, §12940 *et seq.***
**Hostile Work Environment/Harassment Based on Sexual Orientation**
**[As Against All Named Defendants]**

100. The allegations set forth in Paragraphs 1 through 99 are re-alleged and incorporated herein by reference.

101. Ms. Lukovsky was an employee of Defendants.

102. Ms. Lukovsky was subjected to unwanted harassing conduct because of her sexual orientation.

27
**COMPLAINT FOR DAMAGES**

103.   The harassing conduct was so severe, widespread, or persistent that a reasonable person in Ms. Lukovsky's circumstances would have considered the work environment hostile or abusive.

104.   Ms. Lukovsky considered the work environment hostile or abusive.

105.   A supervisor with actual or reasonably perceived authority over Ms. Lukovsky engaged in the conduct.

106.   Such discrimination is in violation of DEFH Act, Gov. Code §12940 et seq. and has resulted in damage and injury to Ms. Lukovsky as alleged herein.

107.   As a proximate result of the Defendants' willful, knowing, and intentional harassment of Ms. Lukovsky, she has sustained and continues to sustain substantial losses in earnings, career opportunities, and other employment benefits, the precise amount of which will be proved at trial.

108.   As a proximate result of the Defendants' willful, knowing, and intentional harassment of Ms. Lukovsky, she has suffered and continues to suffer humiliation, emotional distress, anger, loss of enjoyment of life, embarrassment, anxiety, and mental and physical pain and anguish, all to her damage in a sum according to proof.

109.   Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, and with the wrongful intention of injuring Ms. Lukovsky. Alternatively, Defendants' despicable conduct was carried out in conscious disregard of Ms. Lukovsky's rights. Defendants' conduct was carried out by a managing agent, or an officer, a director, or a managing agent of Defendants who had advanced knowledge of the unfitness of its decision-maker and employed the decision-maker with a conscious disregard of Ms. Lukovsky's rights and/or authorized and/or ratified the decision-maker's conduct. As a result of the Defendant's conduct, Ms. Lukovsky is entitled to recover punitive damages in an amount commensurate with each Defendant's wealth.

110.    In light of the Defendants' willful, knowing, and intentional harassment of Ms. Lukovsky, she seeks equitable relief, including, but not limited to, the return to her previous position, with full employment benefits as if she were never terminated.

111.    Ms. Lukovsky has incurred and continues to incur legal expenses and attorney fees. Ms. Lukovsky is presently unaware of the precise amount of these expenses and fees and prays leave of court to amend this complaint when the amounts are more fully known.

### FIFTH CAUSE OF ACTION
#### Violation of DFEH Act, Gov. Code, §12940 *et seq.*
#### Discrimination Based on Gender
#### [As Against All Named Defendants]

112.    The allegations set forth in Paragraphs 1 through 111 are re-alleged and incorporated herein by reference.

113.    Defendants, and each of them, were employers.

114.    Ms. Lukovsky was an employee of Defendants.

115.    Defendants discharged Ms. Lukovsky.

116.    Ms. Lukovsky's protected status based upon her gender was a motivating reason for the discharge.

117.    Such discrimination is in violation of DEFH Act, Gov. Code §12940 et seq. and has resulted in damage and injury to Ms. Lukovsky as alleged herein.

118.    As a proximate result of the Defendants' willful, knowing, and intentional discrimination against Ms. Lukovsky, she has sustained and continues to sustain substantial losses in earnings, career opportunities, and other employment benefits, the precise amount of which will be proved at trial.

119.    As a proximate result of the Defendants' willful, knowing, and intentional discrimination against Ms. Lukovsky, she has suffered and continues to suffer humiliation, emotional distress, anger, loss of enjoyment of life, embarrassment, anxiety, and mental and physical pain and anguish, all to her damage in a sum according to proof.

120.    Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, and with the wrongful intention of injuring Ms. Lukovsky. Alternatively,

29

**COMPLAINT FOR DAMAGES**

Defendants' despicable conduct was carried out in conscious disregard of Ms. Lukovsky's rights. Defendants' conduct was carried out by a managing agent, or an officer, a director, or a managing agent of Defendants who had advanced knowledge of the unfitness of its decision-maker and employed the decision-maker with a conscious disregard of Ms. Lukovsky's rights and/or authorized and/or ratified the decision-maker's conduct. As a result of the Defendants' conduct, Ms. Lukovsky is entitled to recover punitive damages in an amount commensurate with each Defendant's wealth.

121.    In light of the Defendants' willful, knowing, and intentional discrimination against Ms. Lukovsky, she seeks equitable relief, including, but not limited to, the return to her previous position, with full employment benefits as if she were never terminated.

122.    Ms. Lukovsky has incurred and continues to incur legal expenses and attorney fees. Ms. Lukovsky is presently unaware of the precise amount of these expenses and fees and prays leave of court to amend this complaint when the amounts are more fully known.

### SIXTH CAUSE OF ACTION
**Violation of DFEH Act, Gov. Code, §12940 et seq.**
**Hostile Work Environment/Harassment Based on Gender**
**[As Against All Named Defendants]**

123.    The allegations set forth in Paragraphs 1 through 122 are re-alleged and incorporated herein by reference.

124.    Ms. Lukovsky was an employee of Defendants.

125.    Ms. Lukovsky was subjected to unwanted harassing conduct because of her gender.

126.    The harassing conduct was so severe, widespread, or persistent that a reasonable person in Ms. Lukovsky's circumstances would have considered the work environment hostile or abusive.

127.    Ms. Lukovsky considered the work environment hostile or abusive.

128.    A supervisor with actual or reasonably perceived authority over Ms. Lukovsky engaged in the conduct.

129.    Such discrimination is in violation of DEFH Act, Gov. Code §12940 et seq. and has resulted in damage and injury to Ms. Lukovsky as alleged herein.

30

**COMPLAINT FOR DAMAGES**

130.   As a proximate result of the Defendants' willful, knowing, and intentional harassment of Ms. Lukovsky, she has sustained and continues to sustain substantial losses in earnings, career opportunities, and other employment benefits, the precise amount of which will be proved at trial.

131.   As a proximate result of the Defendants' willful, knowing, and intentional harassment of Ms. Lukovsky, she has suffered and continues to suffer humiliation, emotional distress, anger, loss of enjoyment of life, embarrassment, anxiety, and mental and physical pain and anguish, all to her damage in a sum according to proof.

132.   Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, and with the wrongful intention of injuring Ms. Lukovsky.   Alternatively, Defendants' despicable conduct was carried out in conscious disregard of Ms. Lukovsky's rights. Defendants' conduct was carried out by a managing agent, or an officer, a director, or a managing agent of Defendants who had advanced knowledge of the unfitness of its decision-maker and employed the decision-maker with a conscious disregard of Ms. Lukovsky's rights and/or authorized and/or ratified the decision-maker's conduct.   As a result of the Defendant's conduct, Ms. Lukovsky is entitled to recover punitive damages in an amount commensurate with each Defendant's wealth.

133.   In light of the Defendants' willful, knowing, and intentional harassment of Ms. Lukovsky, she seeks equitable relief, including, but not limited to, the return to her previous position, with full employment benefits as if she were never terminated.

134.   Ms. Lukovsky has incurred and continues to incur legal expenses and attorney fees.  Ms. Lukovsky is presently unaware of the precise amount of these expenses and fees and prays leave of court to amend this complaint when the amounts are more fully known.

### SEVENTH CAUSE OF ACTION
#### Violation of DFEH Act, Gov. Code, §12940 *et seq.*
#### Discrimination Based on Race
#### [As Against All Named Defendants]

135.   The allegations set forth in Paragraphs 1 through 134 are re-alleged and incorporated herein by reference.

31

**COMPLAINT FOR DAMAGES**

136. Defendants, and each of them, were employers.

137. Ms. Lukovsky was an employee of Defendants.

138. Defendants discharged Ms. Lukovsky.

139. Ms. Lukovsky's protected status based upon her race was a motivating reason for the discharge.

140. Such discrimination is in violation of DEFH Act, Gov. Code §12940 et seq. and has resulted in damage and injury to Ms. Lukovsky as alleged herein.

141. As a proximate result of the Defendants' willful, knowing, and intentional discrimination against Ms. Lukovsky, she has sustained and continues to sustain substantial losses in earnings, career opportunities, and other employment benefits, the precise amount of which will be proved at trial.

142. As a proximate result of the Defendants' willful, knowing, and intentional discrimination against Ms. Lukovsky, she has suffered and continues to suffer humiliation, emotional distress, anger, loss of enjoyment of life, embarrassment, anxiety, and mental and physical pain and anguish, all to her damage in a sum according to proof.

143. Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, and with the wrongful intention of injuring Ms. Lukovsky. Alternatively, Defendants' despicable conduct was carried out in conscious disregard of Ms. Lukovsky's rights. Defendants' conduct was carried out by a managing agent, or an officer, a director, or a managing agent of Defendants who had advanced knowledge of the unfitness of its decision-maker and employed the decision-maker with a conscious disregard of Ms. Lukovsky's rights and/or authorized and/or ratified the decision-maker's conduct. As a result of the Defendants' conduct, Ms. Lukovsky is entitled to recover punitive damages in an amount commensurate with each Defendant's wealth.

144. In light of the Defendants' willful, knowing, and intentional discrimination against Ms. Lukovsky, she seeks equitable relief, including, but not limited to, the return to her previous position, with full employment benefits as if she were never terminated.

145.   Ms. Lukovsky has incurred and continues to incur legal expenses and attorney fees. Ms. Lukovsky is presently unaware of the precise amount of these expenses and fees and prays leave of court to amend this complaint when the amounts are more fully known.

## EIGHTH CAUSE OF ACTION
### Violation of DFEH Act, Gov. Code, §12940 *et seq.*
### Hostile Work Environment/Harassment Based on Race
### [As Against All Named Defendants]

146.   The allegations set forth in Paragraphs 1 through 145 are re-alleged and incorporated herein by reference.

147.   Ms. Lukovsky was an employee of Defendants.

148.   Ms. Lukovsky was subjected to unwanted harassing conduct because of her race.

149.   The harassing conduct was so severe, widespread, or persistent that a reasonable person in Ms. Lukovsky's circumstances would have considered the work environment hostile or abusive.

150.   Ms. Lukovsky considered the work environment hostile or abusive.

151.   A supervisor with actual or reasonably perceived authority over Ms. Lukovsky engaged in the conduct.

152.   Such discrimination is in violation of DEFH Act, Gov. Code §12940 et seq. and has resulted in damage and injury to Ms. Lukovsky as alleged herein.

153.   As a proximate result of the Defendants' willful, knowing, and intentional harassment of Ms. Lukovsky, she has sustained and continues to sustain substantial losses in earnings, career opportunities, and other employment benefits, the precise amount of which will be proved at trial.

154.   As a proximate result of the Defendants' willful, knowing, and intentional harassment of Ms. Lukovsky, she has suffered and continues to suffer humiliation, emotional distress, anger, loss of enjoyment of life, embarrassment, anxiety, and mental and physical pain and anguish, all to her damage in a sum according to proof.

155.   Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, and with the wrongful intention of injuring Ms. Lukovsky.   Alternatively,

33

**COMPLAINT FOR DAMAGES**

Defendants' despicable conduct was carried out in conscious disregard of Ms. Lukovsky's rights. Defendants' conduct was carried out by a managing agent, or an officer, a director, or a managing agent of Defendants who had advanced knowledge of the unfitness of its decision-maker and employed the decision-maker with a conscious disregard of Ms. Lukovsky's rights and/or authorized and/or ratified the decision-maker's conduct. As a result of the Defendants' conduct, Ms. Lukovsky is entitled to recover punitive damages in an amount commensurate with each Defendant's wealth.

156.   In light of the Defendants' willful, knowing, and intentional harassment of Ms. Lukovsky, she seeks equitable relief, including, but not limited to, the return to her previous position, with full employment benefits as if she were never terminated.

157.   Ms. Lukovsky has incurred and continues to incur legal expenses and attorney fees. Ms. Lukovsky is presently unaware of the precise amount of these expenses and fees and prays leave of court to amend this complaint when the amounts are more fully known.

### NINTH CAUSE OF ACTION
**Violation of DFEH Act, Gov. Code, § 12940 _et seq._**
**Retaliation**
**[As Against All Named Defendants]**

158.   The allegations set forth in Paragraphs 1 through 157 are re-alleged and incorporated herein by reference.

159.   Ms. Lukovsky engaged in a legally protected activity, namely, filing a grievance against her manager and supervisor regarding their violating the Department of Fair Employment and Housing statutes and other laws and regulations, as well as the Defendants own internal policies and procedures.

160.   As alleged above, Defendants retaliated against Ms. Lukovsky for making these complaints.

161.   Defendants, and each of them, subjected Ms. Lukovsky to an adverse employment action.

162.   Ms. Lukovsky's protected activity was a motivating factor for the adverse employment action.

34

**COMPLAINT FOR DAMAGES**

163.    Such retaliation is in violation of DEFH Act, Gov. Code §12940 et seq. and has resulted in damage and injury to Ms. Lukovsky as alleged herein.

164.    As a proximate result of the Defendants' willful, knowing, and intentional retaliation against Ms. Lukovsky, she has sustained and continues to sustain substantial losses in earnings, career opportunities, and other employment benefits, the precise amount of which will be proved at trial.

165.    As a proximate result of the Defendants' willful, knowing, and intentional retaliation against Ms. Lukovsky, she has suffered and continues to suffer humiliation, emotional distress, anger, loss of enjoyment of life, embarrassment, anxiety, and mental and physical pain and anguish, all to her damage in a sum according to proof.

166.    Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, and with the wrongful intention of injuring Ms. Lukovsky.    Alternatively, Defendants' despicable conduct was carried out in conscious disregard of Ms. Lukovsky's rights. Defendants' conduct was carried out by a managing agent, or an officer, a director, or a managing agent of Defendants who had advanced knowledge of the unfitness of its decision-maker and employed the decision-maker with a conscious disregard of Ms. Lukovsky's rights and/or authorized and/or ratified the decision-maker's conduct.  As a result of the Defendant's conduct, Ms. Lukovsky is entitled to recover punitive damages in an amount commensurate with each Defendant's wealth.

167.    In light of the Defendants' willful, knowing, and intentional retaliation against Ms. Lukovsky, she seeks equitable relief, including, but not limited to, the return to her previous position, with full employment benefits as if she were never terminated.

168.    Ms. Lukovsky has incurred and continues to incur legal expenses and attorney fees.  Ms. Lukovsky is presently unaware of the precise amount of these expenses and fees and prays leave of court to amend this complaint when the amounts are more fully known.

**TENTH CAUSE OF ACTION**
**Violation of DFEH Act, Gov. Code, §12940(i)**
**Failure to Take Corrective Action to Prevent Harassment**
**[As Against All Defendants]**

35

**COMPLAINT FOR DAMAGES**

38

169.   The allegations set forth in Paragraphs 1 through 168 are re-alleged and incorporated herein by reference.

170.   At all times mentioned in this complaint, Government Code §12940(i) was in full force and effect and was binding on the Defendants.   This subsection requires Defendants to take all reasonable steps necessary to prevent discrimination and harassment from occurring.   As alleged above, Defendants violated this subsection by failing to take all reasonable steps necessary to prevent discrimination and harassment from occurring.

171.   As a proximate result of Defendants' conduct, Ms. Lukovsky sustained and continues to sustain damage and injury as alleged herein.

172.   As a proximate result of the Defendants' willful, knowing, and intentional violation of Government Code §12940(i), Ms. Lukovsky has sustained and continues to sustain substantial losses in earnings, career opportunities, and other employment benefits, the precise amount of which will be proved at trial.

173.   As a proximate result of the Defendants' willful, knowing, and intentional violation of Government Code §12940(i), Ms. Lukovsky has suffered and continues to suffer humiliation, emotional distress, anger, loss of enjoyment of life, embarrassment, anxiety, and mental and physical pain and anguish, all to her damage in a sum according to proof.

174.   Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, and with the wrongful intention of injuring Ms. Lukovsky.   Alternatively, Defendants' despicable conduct was carried out in conscious disregard of Ms. Lukovsky's rights. Defendants' conduct was carried out by a managing agent, or an officer, a director, or a managing agent of Defendants who had advanced knowledge of the unfitness of its decision-maker and employed the decision-maker with a conscious disregard of Ms. Lukovsky's rights and/or authorized and/or ratified the decision-maker's conduct.   As a result of the Defendant's conduct, Ms. Lukovsky is entitled to recover punitive damages in an amount commensurate with each Defendant's wealth.

36
**COMPLAINT FOR DAMAGES**

175.    In light of the Defendants' willful, knowing, and intentional discrimination against Ms. Lukovsky, she seeks equitable relief, including, but not limited to, the return to her previous position, with full employment benefits as if she were never terminated.

176.    Ms. Lukovsky has incurred and continues to incur legal expenses and attorney fees.  Ms. Lukovsky is presently unaware of the precise amount of these expenses and fees and prays leave of court to amend this complaint when the amounts are more fully known.

## ELEVENTH CAUSE OF ACTION
### Violation of Gov. Code, §12950
### [As Against All Defendants]

177.    The allegations set forth in Paragraphs 1 through 176- are re-alleged and incorporated herein by reference.

178.    Defendants violated California Government Code §12950 by failing to ensure a workplace free of discrimination, harassment and retaliation and failing to follow the minimum requirements set forth in that section, including, but not limited to, failing to post in a prominent and accessible location in the workplace the DFEH poster relating to the illegality of sexual harassment and failing to distribute the DFEH information sheet on sexual harassment or its equivalent, to employees.

179.    As a proximate result of Defendants' conduct, Ms. Lukovsky sustained and continues to sustain damage and injury as alleged herein.

180.    As a proximate result of the Defendants' willful, knowing, and intentional violation of California Government Code §12950, Ms. Lukovsky has sustained and continues to sustain substantial losses in earnings, career opportunities, and other employment benefits, the precise amount of which will be proved at trial.

181.    As a proximate result of the Defendants' willful, knowing, and intentional violation of California Government Code §12950, Ms. Lukovsky has suffered and continues to suffer humiliation, emotional distress, anger, loss of enjoyment of life, embarrassment, anxiety, and mental and physical pain and anguish, all to her damage in a sum according to proof.

**COMPLAINT FOR DAMAGES**

182. Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, and with the wrongful intention of injuring Ms. Lukovsky. Alternatively, Defendants' despicable conduct was carried out in conscious disregard of Ms. Lukovsky's rights. Defendants' conduct was carried out by a managing agent, or an officer, a director, or a managing agent of Defendants who had advanced knowledge of the unfitness of its decision-maker and employed the decision-maker with a conscious disregard of Ms. Lukovsky's rights and/or authorized and/or ratified the decision-maker's conduct. As a result of the Defendant's conduct, Ms. Lukovsky is entitled to recover punitive damages in an amount commensurate with each Defendant's wealth.

183. In light of the Defendants' willful, knowing, and intentional violation of California Government Code §12950, Ms. Lukovsky has seeks equitable relief, including, but not limited to, the return to her previous position, with full employment benefits as if she were never terminated.

184. Ms. Lukovsky has incurred and continues to incur legal expenses and attorney fees. Ms. Lukovsky is presently unaware of the precise amount of these expenses and fees and prays leave of court to amend this complaint when the amounts are more fully known.

## TWELFTH CAUSE OF ACTION
### Tortious Termination in Violation of Public Policy
[As Against All Defendants]

185. The allegations set forth in Paragraphs 1 through 184 are re-alleged and incorporated herein by reference.

186. By the aforementioned actions, Defendants violated the laws of the State of California, constitutional and statutory authority. Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, and with the wrongful intention of injuring Ms. Lukovsky.

187. As a proximate result of the Defendants' willful, knowing, and intentional violation of the fundamental, substantial, and well-established statutes, rules and ordinances, Ms. Lukovsky has sustained and continues to sustain substantial losses in earnings, career opportunities, and other employment benefits, the precise amount of which will be proved at trial.

38

**COMPLAINT FOR DAMAGES**

188.    As a proximate result of the Defendants' willful, knowing, and intentional violation of the fundamental, substantial, and well-established statutes, rules and ordinances, Ms. Lukovsky has suffered and continues to suffer humiliation, emotional distress, anger, loss of enjoyment of life, embarrassment, anxiety, and mental and physical pain and anguish, all to her damage in a sum according to proof.

189.    Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, and with the wrongful intention of injuring Ms. Lukovsky.    Alternatively, Defendants' despicable conduct was carried out in conscious disregard of Ms. Lukovsky's rights. Defendants' conduct was carried out by a managing agent, or an officer, a director, or a managing agent of Defendants who had advanced knowledge of the unfitness of its decision-maker and employed the decision-maker with a conscious disregard of Ms. Lukovsky's rights and/or authorized and/or ratified the decision-maker's conduct.  As a result of the Defendant's conduct, Ms. Lukovsky is entitled to recover punitive damages in an amount commensurate with each Defendant's wealth.

190.    Ms. Lukovsky has incurred and continues to incur legal expenses and attorney fees. Ms. Lukovsky is presently unaware of the precise amount of these expenses and fees and prays leave of court to amend this complaint when the amounts are more fully known.

### THIRTEENTH CAUSE OF ACTION
**Breach of Implied Covenant of Good Faith and Fair Dealing
[As Against All Defendants]**

191.    The allegations set forth in Paragraphs 1 through 190 are re-alleged and incorporated herein by reference.

192.    The relationship between employer and employee is fundamentally contractual. Inherent in this contractual relationship is a covenant of good faith and fair dealing, which implies a promise that each party will refrain from doing anything to injure the other's right to receive the benefits of the agreement and which protects the parties' reasonable expectations.  The provisions of the California Labor Code are implied by law into all employment agreements, including the employment agreement entered into between Ms. Lukovsky and the Defendants.  By discharging

Ms. Lukovsky, Defendants injured Ms. Lukovsky's right to receive the benefits of her employment agreement and thwarted Ms. Lukovsky's reasonable expectations; i.e., Defendants breached the implied covenant of good faith and fair dealing.

193.    As a proximate result of the Defendants' willful, knowing, and intentional breach of the implied covenant of good faith and fair dealing, Ms. Lukovsky has sustained and continues to sustain substantial losses in earnings, career opportunities, and other employment benefits, the precise amount of which will be proved at trial.

194.    As a proximate result of the Defendants' willful, knowing, and intentional breach of the implied covenant of good faith and fair dealing, Ms. Lukovsky has suffered and continues to suffer humiliation, emotional distress, anger, loss of enjoyment of life, embarrassment, anxiety, and mental and physical pain and anguish, all to her damage in a sum according to proof.

195.    Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, and with the wrongful intention of injuring Ms. Lukovsky.    Alternatively, Defendants' despicable conduct was carried out in conscious disregard of Ms. Lukovsky's rights. Defendants' conduct was carried out by a managing agent, or an officer, a director, or a managing agent of Defendants who had advanced knowledge of the unfitness of its decision-maker and employed the decision-maker with a conscious disregard of Ms. Lukovsky's rights and/or authorized and/or ratified the decision-maker's conduct.    As a result of the Defendant's conduct, Ms. Lukovsky is entitled to recover punitive damages in an amount commensurate with each Defendant's wealth.

196.    In light of the Defendants' willful, knowing, and intentional breach of the implied covenant of good faith and fair dealing, Ms. Lukovsky seeks equitable relief, including, but not limited to, the return to her previous position, with full employment benefits as if she were never terminated.

197.    Ms. Lukovsky has incurred and continues to incur legal expenses and attorney fees. Ms. Lukovsky is presently unaware of the precise amount of these expenses and fees and prays leave of court to amend this complaint when the amounts are more fully known.

40

COMPLAINT FOR DAMAGES

## REQUEST FOR JURY TRIAL

1.    Plaintiff Ludmila Lisa Lukovsky requests a trial by jury.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Ludmila Lisa Lukovsky requests the following:

1.    For general damages to compensate Plaintiff for the humiliation, emotional distress, anger, loss of enjoyment of life, embarrassment, anxiety, and mental and physical pain and anguish she has and will suffer;

2.    For all damages provided under California Civil Code, §3294;

3.    For punitive damages;

4.    For medical and related expenses, past and future, in an amount according to proof at the time of trial;

5.    For loss of earnings, past and future, and all other special damages in an amount according to proof at the time of trial;

6.    For diminution in earning capacity, past and future, in an amount according to proof at trial;

7.    For mental and emotional distress damages on each cause of action;

8.    For all equitable remedies available, including, but not limited to, her being returned to her former position with the Defendants, along with all the benefits that would have accrued to her as if she had never been terminated.

9.    For pre-judgment interest on all damages award under Civil Code §3291 and Civil Code §1021.5, and any other applicable statute or legal principle.

10.    For all civil penalties provided for by statute;

11.    For attorney's fees;

12.    For costs of suit herein incurred; and,

13.    For such other and further relief as the court may deem just and proper.

DATED: January _19_, 2010        Respectfully submitted,

LAW OFFICE OF MICHAEL WADDINGTON, APC

_M. Wadda_

Michael Waddington, Esq.
Attorney for Plaintiff, LUDMILA LISA LUKOVSKY

41

**COMPLAINT FOR DAMAGES**



Exhibit "A"

STATE OF CALIFORNIA - STATE AND CONSUMER SERVICES AGENCY                    ARNOLD SCHWARZENEGGER, Governor

## DEPARTMENT OF FAIR EMPLOYMENT & HOUSING

611 West Sixth Street, Suite 1500 ,Los Angeles, CA 90017
(213) 439-6799 (800) 700-2320 Fax (213) 892-6494

April 27, 2009

LUDMILA (LISA) LUKOVSKY
328 S. Rexford Dr., Apt. 5
Holywood, CA 90028

RE: E200809S1742-00-arsc
LUKOVSKY/MARRIOTT INTERNATIONAL, INC.

Dear LUDMILA (LISA) LUKOVSKY:

# NOTICE TO COMPLAINANT'S ATTORNEY

Enclosed is a copy of your client's complaint of discrimination filed with the
Department of Fair Employment and Housing on 4/24/2009 pursuant to the
California Fair Employment and Housing Act, Government Code section 12900 et
seq.  Also enclosed is a copy of your client's Notice of Case Closure, which
constitutes your client's right-to-sue notice.

Please note that under Government Code section 12962, you are responsible for
**service of the complaint** on respondent(s). You should also enclose a copy of the
Notice of Case Closure along with the complaint.  These documents must be
served within **60 days** of the filing date of the complaint.  Government Code
section 12962(b) further provides that complaints must be served either personally
or by certified mail with return receipt requested.

For additional information, please read the enclosed Notice of Case Closure that
explains the conditions for filing a private lawsuit in the State of California.

Sincerely,

Lottie Woodruff
District Administrator

Enclosure:    Complaint of Discrimination
              Notice of Case Closure

DFEH-200-06 (01/05)

*EX. A*

STATE OF CALIFORNIA - STATE AND CONSUMER SERVICES AGENCY

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
611 West Sixth Street, Suite 1500 ,Los Angeles, CA 90017
(213) 439-6799 (800) 700-2320 Fax (213) 892-6494

ARNOLD SCHWARZENEGGER, Governor



April 27, 2009

LUDMILA (LISA) LUKOVSKY
328 S. Rexford Dr., Apt. 5
Holywood, CA 90028

RE:   E200809S1742-00-arsc
      <u>LUKOVSKY/MARRIOTT INTERNATIONAL, INC.</u>

Dear LUDMILA (LISA) LUKOVSKY:

---

**NOTICE OF CASE CLOSURE**

This letter informs that the above-referenced complaint that was filed with the Department of Fair Employment and Housing (DFEH) has been closed effective April 24, 2009 because an immediate right-to-sue notice was requested.  DFEH will take no further action on the complaint.

This letter is also the Right-To-Sue Notice.  According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint.  The civil action must be filed within one year from the date of this letter.

If a federal notice of Right-To-Sue is wanted, the U.S. Equal Employment Opportunity Commission (EEOC) must be visited to file a complaint within 30 days of receipt of this DFEH *Notice of Case Closure* or within 300 days of the alleged discriminatory act, whichever is earlier.

Notice of Case Closure
Page Two

DFEH does not retain case files beyond three years after a complaint is filed, unless the case is still open at the end of the three-year period.

Sincerely,

Lottie Woodruff
District Administrator

cc:   Case File

Jeff Stutts
Director of Event Management
MARRIOTT INTERNATIONAL, INC.
1755 N. Highland Ave.
Hollywood, CA  90028

DFEH-200-43 (06/06)

# * * * EMPLOYMENT * * *

**COMPLAINT OF DISCRIMINATION UNDER
THE PROVISIONS OF THE CALIFORNIA
IR EMPLOYMENT AND HOUSING ACT**

DFEH # _E-200809-S-1742-00-arc_
DFEH USE ONLY

## CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

YOUR NAME (indicate Mr. or Ms.)   _Ludmila (Lisa) Lukovsky_   TELEPHONE NUMBER (INCLUDE AREA CODE) _(310) 980-9719_

ADDRESS   _328 J. Rexford Drive #5_

CITY/STATE/ZIP   _Beverly Hills, CA 90212_   COUNTY _LA_   COUNTY CODE

NAMED IS THE EMPLOYER, PERSON, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, OR STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME:

NAME   _Marriott International, Inc._   TELEPHONE NUMBER (Include Area Code) _(323) 856-1200_

ADDRESS   _1755 N. Highland Ave._   DFEH USE ONLY

CITY/STATE/ZIP   _Hollywood, CA   90028_   COUNTY   COUNTY CODE

NO. OF EMPLOYEES/MEMBERS (if known) _200 to 250 on property_   DATE MOST RECENT OR CONTINUING DISCRIMINATION TOOK PLACE (month, day, and year) _March 12, 2009_   RESPONDENT CODE

THE PARTICULARS ARE:

I allege that on _May 2008_ the following conduct occurred:

_Termination occurred on March 12, 2009_

- [X] termination
- [ ] lay-off
- [X] demotion
- [ ] harassment
- [ ] genetic characteristics testing
- [ ] constructive discharge (forced to quit)
- [ ] impermissible non-job-related inquiry

- [ ] denial of employment
- [ ] denial of promotion
- [ ] denial of transfer
- [X] denial of accommodation
- [X] failure to prevent discrimination or retaliation
- [X] retaliation
- [ ] other (specify)

- [ ] denial of family or medical leave
- [ ] denial of pregnancy leave
- [ ] denial of equal pay
- [ ] denial of right to wear pants
- [ ] denial of pregnancy accommodation

by   _Jeff Stutts_   _Director of Event Management_
Name of Person   Job Title (supervisor/manager/personnel director/etc.)

because of:

- [X] sex
- [X] age
- [ ] religion
- [ ] race/color
- [X] national origin/ancestry
- [ ] marital status
- [X] sexual orientation
- [ ] association
- [ ] disability (physical or mental)
- [ ] medical condition (cancer or genetic characteristic)
- [ ] other (specify)
- [X] retaliation for engaging in protected activity or requesting a protected leave or accommodation

State what you believe to be the reason(s) for discrimination

I wish to pursue this matter in court. I hereby request that the Department of Fair Employment and Housing provide a right-to-sue notice. I understand that if I want a federal notice of right-to-sue, I must visit the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of the DFEH "Notice of Case Closure," or within 300 days of the alleged discriminatory act, whichever is earlier.

I have not been coerced into making this request, nor do I make it based on fear of retaliation if I do not do so. I understand it is the Department of Fair Employment and Housing's policy not to process or reopen a complaint once the complaint has been closed on the basis of "Complainant Elected Court Action."

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct of my own knowledge except as to matters stated on my information and belief, and as to these matters I believe it to be true.

Dated   _04/23/09_

At   _Beverly Hills, CA_
City

_L. Lukovsky_
COMPLAINANT'S SIGNATURE

DATE FILED: _4/24/09_

DFEH-300-03 (04/08)
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

**RECEIVED**

APR 2 4 2009

Department of Fair Employment and Housing

STATE OF CALIFORNIA

STATE OF CALIFORNIA - STATE AND CONSUMER SERVICES AGENCY    ARNOLD SCHWARZENEGGER, Governor

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
1055 West 7th Street, Suite 1400, Los Angeles, CA  90017
(213) 439-6799  (800) 700-2320  Fax (213) 439-6796
www.dfeh.ca.gov



January 19, 2010

LUDMILA (LISA) LUKOVSKY
328 S. Rexford Dr., Apt. 5
Beverly Hills, CA 90212

RE:  E200809S1742-01-arsc
     LUKOVSKY/CIM GROUP, LP

Dear LUDMILA (LISA) LUKOVSKY:

## NOTICE TO COMPLAINANT'S ATTORNEY

Enclosed is a copy of your client's complaint of discrimination filed with the Department of Fair Employment and Housing on 4/24/2009 pursuant to the California Fair Employment and Housing Act, Government Code section 12900 et seq. Also enclosed is a copy of your client's Notice of Case Closure, which constitutes your client's right-to-sue notice.

Please note that under Government Code section 12962, you are responsible for **service of the complaint** on respondent(s). You should also enclose a copy of the Notice of Case Closure along with the complaint.  These documents must be served within 60 days of the filing date of the complaint.  Government Code section 12962(b) further provides that complaints must be served either personally or by certified mail with return receipt requested.

For additional information, please read the enclosed Notice of Case Closure that explains the conditions for filing a private lawsuit in the State of California.

Sincerely,

Lottie Woodruff
District Administrator

Enclosure:   Complaint of Discrimination
             Notice of Case Closure

DFEH-200-06 (01/05)

EX.B

50



STATE OF CALIFORNIA - STATE AND CONSUMER SERVICES AGENCY                                    ARNOLD SCHWARZENEGGER, Governor

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
1055 West 7th Street, Suite 1400, Los Angeles, CA  90017
(213) 439-6799  (800) 700-2320  Fax (213) 439-6796
www.dfeh.ca.gov



January 19, 2010


LUDMILA (LISA) LUKOVSKY
328 S. Rexford Dr., Apt. 5
Beverly Hills, CA  90212

RE:     E200809S1742-01-arsc
        LUKOVSKY/CIM GROUP, LP

Dear LUDMILA (LISA) LUKOVSKY:

### NOTICE OF CASE CLOSURE

This letter informs that the above-referenced complaint that was filed with the Department of Fair Employment and Housing (DFEH) has been closed effective April 24, 2009 because an immediate right-to-sue notice was requested.  DFEH will take no further action on the complaint.

This letter is also the Right-To-Sue Notice.  According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint.  The civil action must be filed within one year from the date of this letter.

If a federal notice of Right-To-Sue is wanted, the U.S. Equal Employment Opportunity Commission (EEOC) must be visited to file a complaint within 30 days of receipt of this DFEH *Notice of Case Closure* or within 300 days of the alleged discriminatory act, whichever is earlier.

Notice of Case Closure
Page Two


DFEH does not retain case files beyond three years after a complaint is filed, unless the case is still open at the end of the three-year period.

Sincerely,

Lottie Woodruff
District Administrator


cc:   Case File



Jeff Stutts
Director of Event Management
CIM GROP, LP
6801 Hollywood Blvd.
Hollywood, CA  90028

DFEH-200-43 (06/06)

**COMPLAINT OF DISCRIMINATION UNDER
THE PROVISIONS OF THE CALIFORNIA
FAIR EMPLOYMENT AND HOUSING ACT**

EMPLOYMENT

DFEH # E-200809-S-1742-01-arsc
*DFEH USE ONLY*

## CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

YOUR NAME (indicate Mr. or Ms.)
Ludmila (Lisa) Lukovsky

TELEPHONE NUMBER (INCLUDE AREA CODE)
(310) 980-9719

ADDRESS
328 S. Roxford Drive #8

CITY/STATE/ZIP
Beverly Hills, CA 90212

COUNTY LA

COUNTY CODE

NAMED IS THE EMPLOYER, PERSON, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, OR STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME:

NAME
CIM Group, LP

TELEPHONE NUMBER (Include Area Code)

ADDRESS
6801 Hollywood Boulevard

DFEH USE ONLY

CITY/STATE/ZIP
Hollywood, CA

COUNTY

COUNTY CODE

NO. OF EMPLOYEES/MEMBERS (if known)

DATE MOST RECENT OR CONTINUING DISCRIMINATION TOOK PLACE (month, day, and year)
March 12, 2009

RESPONDENT CODE

THE PARTICULARS ARE:

I allege that on __May, 2008__, the following conduct occurred:

Termination occurred on March 12, 2009

- [X] termination
- [ ] lay-off
- [X] demotion
- [X] harassment
- [ ] genetic characteristics testing
- [ ] constructive discharge (forced to quit)
- [ ] impermissible non-job-related inquiry

- [ ] denial of employment
- [ ] denial of promotion
- [ ] denial of transfer
- [ ] denial of accommodation
- [X] failure to prevent discrimination or retaliation
- [X] retaliation
- [ ] other (specify)

- [ ] denial of family or medical leave
- [ ] denial of pregnancy leave
- [ ] denial of equal pay
- [ ] denial of right to wear pants
- [ ] denial of pregnancy accommodation

by ___Jeff___  ___Smith___   Director of Event Management
Name of Person            Job Title (supervisor/manager/personnel director/etc.)

because of:
- [X] sex
- [X] age
- [ ] religion
- [ ] race/color

- [X] national origin/ancestry
- [ ] marital status
- [X] sexual orientation
- [ ] association

- [ ] disability (physical or mental)
- [ ] medical condition (cancer or genetic characteristic)
- [ ] other (specify)

- [X] retaliation for engaging in protected activity or requesting a protected leave or accommodation

State what you believe to be the reason(s) for discrimination

I wish to pursue this matter in court. I hereby request that the Department of Fair Employment and Housing provide a right-to-sue notice. I understand that if I want a federal notice of right-to-sue, I must visit the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of the DFEH "Notice of Case Closure," or within 300 days of the alleged discriminatory act, whichever is earlier.

I have not been coerced into making this request, nor do I make it based on fear of retaliation if I do not do so. I understand it is the Department of Fair Employment and Housing's policy to not process or reopen a complaint once the complaint has been closed on the basis of "Complainant Elected Court Action."

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct of my own knowledge except as to matters stated on my information and belief, and as to those matters I believe it to be true.

Dated __12/11/09__

At __Beverly Hills, CA__
        City

COMPLAINANT'S SIGNATURE

RECEIVED
DEC 14 2009
Department of Fair Employment and Housing

DATE FILED: __12/14/09__

DFEH-300-03 (04/08)
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

STATE OF CALIFORNIA

ATTORNEY OR PARTY WITHOUT ATTORNEY *(State Bar number, and address):*
Michael Waddington, Esq. (SBN 1722...)
LAW OFFICE OF MICHAEL WADDINGTON, APC
9601 Wilshire Boulevard, Suite 650
Beverly Hills, California 90210
TELEPHONE NO.: (310) 276-4100   FAX NO.: (310) 276-4106
ATTORNEY FOR *(Name):* Ludmila Lisa Lukovsky

FOR COURT USE ONLY

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

JAN 27 2010

John A. Clarke, Executive Officer/Clerk
By _____, Deputy
AMBER LAFLEUR-CLAYTON

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS:
MAILING ADDRESS: 111 North Hill Street
CITY AND ZIP CODE: Los Angeles, CA
BRANCH NAME: Central

CASE NAME:
Lukovsky v. Marriott International, et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| ☑ Unlimited (Amount demanded exceeds $25,000) | ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter ☐ Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: DEPT: | BC 430758 |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)
**Employment**
☑ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)
**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)
**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)
**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
☐ Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☑ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary   b. ☑ nonmonetary; declaratory or injunctive relief   c. ☑ punitive
4. Number of causes of action *(specify):* 13
5. This case ☐ is ☑ is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: January 19, 2010
Michael Waddington
(TYPE OR PRINT NAME)                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

American LegalNet, Inc.
www.FormsWorkflow.com

54

| SHORT TITLE: | CASE NUMBER |
|---|---|
| Lukvosky v. Marriott International, et al | BC430758 |

## CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to LASC Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.**

Item I.  Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? ☑ YES    CLASS ACTION? ☐ YES    LIMITED CASE? ☐ YES    TIME ESTIMATED FOR TRIAL 10    ☐ HOURS/ ☑ DAYS

Item II.  Select the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4)

**Step 1:** After first completing the Civil Case Cover Sheet Form, find the main civil case cover sheet heading for your case in the left margin below, and, to the right in Column **A**, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check <u>one</u> Superior Court type of action in Column **B** below which best describes the nature of this case.

**Step 3:** In Column **C**, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Los Angeles Superior Court Local Rule 2.0.

**Applicable Reasons for Choosing Courthouse Location (see Column C below)**

1. Class Actions must be filed in the County Courthouse, Central District.
2. May be filed in Central (Other county, or no Bodily Injury/Property Damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV.  Sign the declaration.

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ A7100   Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | ☐ A7110   Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| **Other Personal Injury/Property Damage/Wrongful Death Tort** | Asbestos  (04) | ☐ A6070   Asbestos Property Damage<br>☐ A7221   Asbestos - Personal Injury/Wrongful Death | 2.<br>2. |
| | Product Liability (24) | ☐ A7260   Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | ☐ A7210   Medical Malpractice - Physicians & Surgeons<br>☐ A7240   Other Professional Health Care Malpractice | 1., 2., 4.<br>1., 2., 4. |
| | Other<br>Personal Injury<br>Property Damage<br>Wrongful Death<br>(23) | ☐ A7250   Premises Liability (e.g., slip and fall)<br>☐ A7230   Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.)<br>☐ A7270   Intentional Infliction of Emotional Distress<br>☐ A7220   Other Personal Injury/Property Damage/Wrongful Death | 1., 2., 4.<br>1., 2., 4.<br>1., 2., 3.<br>1., 2., 4. |
| **Non-Personal Injury/Property Damage/Wrongful Death Tort** | Business Tort  (07) | ☐ A6029   Other Commercial/Business Tort (not fraud/breach of contract) | 1., 2., 3. |
| | Civil Rights (08) | ☐ A6005   Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | ☐ A6010   Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | ☐ A6013   Fraud (no contract) | 1., 2., 3. |

LACIV 109 (Rev. 01/07)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

LASC, rule 2.0
Page 1 of 4

SHORT TITLE:
Lukvosky v. Marriott International, et al

CASE NUMBER

| A<br>Civil Case Cover<br>Sheet Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons<br>-See Step 3 Above |
|---|---|---|
| Professional<br>Negligence<br>(25) | ☐ A6017  Legal Malpractice<br>☐ A6050  Other Professional Malpractice (not medical or legal) | 1., 2., 3.<br>1., 2., 3. |
| Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 2.,3. |
| Wrongful Termination<br>(36) | ☑ A6037  Wrongful Termination | 1., 2., 3. |
| Other Employment<br>(15) | ☐ A6024  Other Employment Complaint Case<br>☐ A6109  Labor Commissioner Appeals | 1., 2., 3.<br>10. |
| Breach of Contract/<br>Warranty<br>(06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not Unlawful Detainer or wrongful eviction)<br>☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence)<br>☐ A6019  Negligent Breach of Contract/Warranty (no fraud)<br>☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 2., 5.<br>2., 5.<br>1., 2., 5.<br>1., 2., 5. |
| Collections<br>(09) | ☐ A6002  Collections Case-Seller Plaintiff<br>☐ A6012  Other Promissory Note/Collections Case | 2., 5., 6.<br>2., 5. |
| Insurance Coverage<br>(18) | ☐ A6015  Insurance Coverage (not complex) | 1., 2., 5., 8. |
| Other Contract<br>(37) | ☐ A6009  Contractual Fraud<br>☐ A6031  Tortious Interference<br>☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 5.<br>1., 2., 3., 5.<br>1., 2., 3., 8. |
| Eminent<br>Domain/Inverse<br>Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation      Number of parcels_____ | 2. |
| Wrongful Eviction<br>(33) | ☐ A6023  Wrongful Eviction Case | 2., 6. |
| Other Real Property<br>(26) | ☐ A6018  Mortgage Foreclosure<br>☐ A6032  Quiet Title<br>☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6.<br>2., 6.<br>2., 6. |
| Unlawful Detainer-<br>Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| Unlawful Detainer-<br>Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| Unlawful Detainer-<br>Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2., 6. |
| Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2., 6. |
| Petition re Arbitration<br>(11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |

Left margin categories (top to bottom): Non-Personal Injury/Property Damage/ Wrongful Death Tort (Cont'd.) · Employment · Contract · Real Property · Unlawful Detainer · Judicial Review

LACIV 109 (Rev. 01/07)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM<br>AND STATEMENT OF LOCATION**

LASC, rule 2.0
Page 2 of 4

| SHORT TITLE: | CASE NUMBER |
|---|---|
| Lukvosky v. Marriott International, et al | |

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C**<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Judicial Review (Cont'd.)** | Writ of Mandate<br>(02) | ☐ A6151   Writ - Administrative Mandamus | 2., 8. |
| | | ☐ A6152   Writ - Mandamus on Limited Court Case Matter | 2. |
| | | ☐ A6153   Writ - Other Limited Court Case Review | 2. |
| | Other Judicial Review<br>(39) | ☐ A6150   Other Writ /Judicial Review | 2., 8. |
| **Provisionally Complex Litigation** | Antitrust/Trade<br>Regulation (03) | ☐ A6003   Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007   Construction defect | 1., 2., 3. |
| | Claims Involving Mass<br>Tort (40) | ☐ A6006   Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035   Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort<br>Environmental  (30) | ☐ A6036   Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage<br>Claims from Complex<br>Case (41) | ☐ A6014   Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | Enforcement<br>of Judgment<br>(20) | ☐ A6141   Sister State Judgment | 2., 9. |
| | | ☐ A6160   Abstract of Judgment | 2., 6. |
| | | ☐ A6107   Confession of Judgment (non-domestic relations) | 2., 9. |
| | | ☐ A6140   Administrative Agency Award (not unpaid taxes) | 2., 8. |
| | | ☐ A6114   Petition/Certificate for Entry of Judgment on Unpaid Tax | 2., 8. |
| | | ☐ A6112   Other Enforcement of Judgment Case | 2., 8., 9. |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033   Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints<br>(Not Specified Above)<br>(42) | ☐ A6030   Declaratory Relief Only | 1., 2., 8. |
| | | ☐ A6040   Injunctive Relief Only (not domestic/harassment) | 2., 8. |
| | | ☐ A6011   Other Commercial Complaint Case (non-tort/non-complex) | 1., 2., 8. |
| | | ☐ A6000   Other Civil Complaint (non-tort/non-complex) | 1., 2., 8. |
| **Miscellaneous Civil Petitions** | Partnership Corporation<br>Governance(21) | ☐ A6113   Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions<br>(Not Specified Above)<br>(43) | ☐ A6121   Civil Harassment | 2., 3., 9. |
| | | ☐ A6123   Workplace Harassment | 2., 3., 9. |
| | | ☐ A6124   Elder/Dependent Adult Abuse Case | 2., 3., 9. |
| | | ☐ A6190   Election Contest | 2. |
| | | ☐ A6110   Petition for Change of Name | 2., 7. |
| | | ☐ A6170   Petition for Relief from Late Claim Law | 2., 3., 4., 8. |
| | | ☐ A6100   Other Civil Petition | 2., 9. |

LACIV 109 (Rev. 01/07)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM**
**AND STATEMENT OF LOCATION**

LASC, rule 2.0
Page 3 of 4

| SHORT TITLE: | CASE NUMBER |
|---|---|
| Lukvosky v. Marriott International, et al | |

**Item III.** Statement of Location: Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., **Step 3** on Page 1, as the proper reason for filing in the court location you selected.

| REASON: CHECK THE NUMBER UNDER COLUMN C WHICH APPLIES IN THIS CASE<br><br>☑1. ☑2. ☑3. ☐4. ☐5. ☐6. ☐7. ☐8. ☐9. ☐10. | ADDRESS:<br><br>1755 North Highland |
|---|---|
| **CITY:** Hollywood | **STATE:** CA | **ZIP CODE:** 90028 | |

**Item IV.** *Declaration of Assignment:* I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the Superior courthouse in the Central District of the Los Angeles Superior Court (Code Civ. Proc., § 392 et seq., and LASC Local Rule 2.0, subds. (b), (c) and (d)).

Dated: January 19, 2010

(SIGNATURE OF ATTORNEY/FILING PARTY)

---

## PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet form CM-010.

4. Complete Addendum to Civil Case Cover Sheet form LACIV 109 (Rev. 01/07), LASC Approved 03-04.

5. Payment in full of the filing fee, unless fees have been waived.

6. Signed order appointing the Guardian ad Litem, JC form FL-935, if the plaintiff or petitioner is a minor under 18 years of age, or if required by Court.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

LACIV 109 (Rev. 01/07)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

LASC, rule 2.0
Page 4 of 4

58

# EXHIBIT "B"

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
Marriott International, Inc., a Delaware Corporation; CIM Group, Inc.,
L.P., a California Limited Partnership; and DOES 1 through 100,
inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Ludmila Lisa Lukovsky, an individual

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

JAN 27 2010

John A. Clarke, Executive Officer/Clerk
By _____ Deputy
AMBER LAFLEUR-CLAYTON

REC'D ROOM 109
JAN 2 1 2010

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Los Angeles Superior Court, Central District, 111 North Hill Street, Los<br>Angeles, California | **CASE NUMBER:**<br>*(Número del Caso):*<br>BC430758 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Michael Waddington, 9601 Wilshire Blvd, # 650, Beverly Hills, CA 90210; T: 310-276-4100; F: 310-276-4106.

**DATE:** JAN 27 2010     JOHN A. CLARKE, CLERK by _____ AMBER LAFLEUR-CLAYTON , **Deputy**
*(Fecha)*                          *(Secretario)*                                                              *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
       ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
       ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
       ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

[SEAL]

| | |
|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** |

Page 1 of 1

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

American LegalNet, Inc.
www.FormsWorkflow.com

# EXHIBIT "C"

CIV-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|

Michael Waddington, SB# 172279
Law Office of Michael Waddington, APC
9601 Wilshire Blvd., Suite 650
Beverly Hills, CA 90210

TELEPHONE NO.: (310) 276-4100   FAX NO. *(Optional)*: (310) 276-4006
E-MAIL ADDRESS *(Optional)*: mwaddington@waddington-law.com
ATTORNEY FOR *(Name)*: Plaintiff Ludmila Lisa Lukovsky

**REC'D**

**MAR 0 3 2010**

**FILING WINDOW**

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 111 N. Hill St.
MAILING ADDRESS: 111 N. Hill St.
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Stanley Mosk Courthouse

PLAINTIFF/PETITIONER: Ludmila Lisa Lukovsky

DEFENDANT/RESPONDENT: Marriott International, Inc., et al.

| REQUEST FOR DISMISSAL | CASE NUMBER: |
|---|---|
| [ ] Personal Injury, Property Damage, or Wrongful Death | EC430758 |

[ ] Motor Vehicle  [ ] Other
[ ] Family Law  [ ] Eminent Domain
[X] Other *(specify)*: Employment

Dep. 78

– A conformed copy will not be returned by the clerk unless a method of return is provided with the document. –

1. TO THE CLERK: Please dismiss this action as follows:
   a. (1) [ ] With prejudice  (2) [X] Without prejudice
   b. (1) [ ] Complaint  (2) [ ] Petition
      (3) [ ] Cross-complaint filed by *(name)*:                    on *(date)*:
      (4) [ ] Cross-complaint filed by *(name)*:                    on *(date)*:
      (5) [ ] Entire action of all parties and all causes of action
      (6) [X] Other *(specify)*:* Only as to defendant CIM Group, L.P.

2. (Complete in all cases except family law cases.)
   [ ] Court fees and costs were waived for a party in this case. *(This information may be obtained from the clerk. If this box is checked, the declaration on the back of this form must be completed.)*

Date: March 3, 2010

Michael Waddington, SB# 172279                          ▶ *(signature)*
(TYPE OR PRINT NAME OF [X] ATTORNEY  [ ] PARTY WITHOUT ATTORNEY)   Attorney or party without attorney for: Ludmila Lisa
*If dismissal requested is of specified parties only of specified causes of action   Lukovsky
only, or of specified cross-complaints only, so state and identify the parties,   [X] Plaintiff/Petitioner  [ ] Defendant/Respondent
causes of action, or cross-complaints to be dismissed.*   [ ] Cross - complainant

3. TO THE CLERK: Consent to the above dismissal is hereby given.**
   Date:

                                                          ▶
(TYPE OR PRINT NAME OF [ ] ATTORNEY  [ ] PARTY WITHOUT ATTORNEY)   *(signature)*
                                                          Attorney or party without attorney for:
** If a cross-complaint – or Response (Family Law) seeking affirmative
relief – is on file, the attorney for cross-complainant (respondent) must   [ ] Plaintiff/Petitioner  [ ] Defendant/Respondent
sign this consent if required by Code of Civil Procedure section 581 (i)
or (j).   [ ] Cross - Complainant

*(To be completed by clerk.)*
4. [ ] Dismissal entered as requested on *(date)*:
5. [ ] Dismissal entered on *(date)*:                    as to only *(name)*:
6. [ ] Dismissal not entered as requested for the following reasons *(specify)*:

7. a. [ ] Attorney or party without attorney notified on *(date)*:
   b. [ ] Attorney or party without attorney not notified. Filing party failed to provide
      [ ] a copy to be conformed  [ ] means to return conformed copy
   Date:                    Clerk, by                                        , Deputy

Form Adopted for Mandatory Use
Judicial Council of California
CIV-110 (Rev. July 1, 2009)

**REQUEST FOR DISMISSAL**   Legal Solutions® Plus   Code of Civil Procedure, § 581 et seq.; Gov. Code, § 68637(c); Cal. Rules of Court, rule 3.1390
Page 1 of 2

**FEDERAL COURT PROOF OF SERVICE**
***Ludmilla Lisa Lukovsky v. Marriott International, Inc., et al.***
USDC Central District - Western Division Case No.: Pending
312 North Spring Street, Room G-8, Los Angeles, CA 90012
Client/Matter: 22987-82

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

At the time of service, I was over 18 years of age and not a party to the action. My business address is 221 North Figueroa Street, Suite 1200, Los Angeles, California 90012.

On **March 4, 2010**, I served the following document **NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(b) (DIVERSITY)** on the following interested party at the following address:

Michael Waddington, Esq.
LAW OFFICES OF MICHAEL WADDINGTON
9601 Wilshire Boulevard, Suite 650
Beverly Hills, California 90210

Phone: (310) 276-4100
Fax:    (310) 276-4006
Email: michael@waddington-law.com

**BY U.S. MAIL**

I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses listed above.

I placed the envelope or package for collection and mailing, following our ordinary business practices. I am readily familiar with the firm's practice for collection and processing correspondence for mailing. Under that practice, on the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the U.S. Postal Service, in a sealed envelope or package with the postage fully prepaid.

**FEDERAL**

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made. Executed on **March 4, 2010**, at Los Angeles, California.

Norma Chanes

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Manuel Real and the assigned discovery Magistrate Judge is Margaret A. Nagle.

The case number on all documents filed with the Court should read as follows:

## CV10- 1607 R (MANx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

Unless otherwise ordered, the United States District Judge assigned to this case will hear and determine all discovery related motions.

=================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division** | [ ] **Southern Division** | [ ] **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL COVER SHEET**

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| Ludmila Lisa Lukovsky | Marriott International, Inc. |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Michael Waddington, Esq.<br>LAW OFFICES OF MICHAEL WADDINGTON<br>9601 WILSHIRE BOULEVARD, SUITE 650<br>BEVERLY HILLS, CALIFORNIA 90210<br><br>(310) 276-4100 | Steven G. Gatley, Esq. (SB# 155986)<br>LEWIS BRISBOIS BISGAARD & SMITH LLP<br>221 NORTH FIGUEROA STREET, 12TH FLOOR<br>LOS ANGELES, CALIFORNIA 90012<br><br>(213) 250-1800 |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant
☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☐ 1 Original Proceeding
☒ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify):
☐ 6 Multi-District Litigation
☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☒ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No   **☐ MONEY DEMANDED IN COMPLAINT: $** _____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Diversity of Citizenship 28 U.S.C. section 1441(a-b)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE/PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/Exchange | ☐ 190 Other Contract | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 195 Contract Product Liability | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 630 Liquor Laws | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 196 Franchise | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 640 R.R. & Truck | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | REAL PROPERTY | | ☐ 445 American with Disabilities - Employment | ☐ 650 Airline Regs | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 210 Land Condemnation | IMMIGRATION | | ☐ 660 Occupational Safety/Health | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 220 Foreclosure | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 690 Other | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 230 Rent Lease & Ejectment | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 240 Torts to Land | ☐ 465 Other Immigration Actions | | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 245 Tort Product Liability | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 290 All Other Real Property | | | | ☐ 871 IRS - Third Party 26 USC 7609 |

**FOR OFFICE USE ONLY:** Case Number: **CV10-01607**

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

CV-71 (05/08)

**CIVIL COVER SHEET**

Page 1 of 2

CCD-JS44

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

CIVIL COVER SHEET

**VIII(a).   IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? [X] No   [ ] Yes

If yes, list case number(s):

**VIII(b).   RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? [X] No   [ ] Yes

If yes, list case number(s):

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   [ ] A. Arise from the same or closely related transactions, happenings, or events; or

[ ] B. Call for determination of the same or substantially related or similar questions of law and fact; or

[ ] C. For other reasons would entail substantial duplication of labor if heard by different judges; or

[ ] D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX.  VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.

[X] Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Ludmilla Lisa Lukovsky, Los Angeles County, State of California | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.

[X] Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Marriott International Inc., County of Montgomery, State of Maryland |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.

Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County, State of California | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties

Note: In land condemnation cases, use the location of the tract of land involved

**X.  SIGNATURE OF ATTORNEY (OR PRO PER):**      Date  March 4, 2010

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |